**Jessie W. HEFLIN**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**Civ. A. No. C81–2168.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 21, 1982.

David E. Allman, Allman, Lanner & Sikes, Atlanta, Ga., for plaintiff.

Mark Dickerson, Asst. Atty. Gen., Atlanta, Ga., for plaintiff/intervenor.

Thomas Harper, Eugene G. Partain, Robert M. Travis, Powell, Goldstein, Frazer & Murphy, Richard G. Greer, Greer, Klosik & Daugherty, Atlanta, Ga., for defendant.

ORDER

ORINDA D. EVANS, District Judge.

Plaintiff Heflin brought this action in the State Court of DeKalb County, seeking insurance benefits beyond those already paid by Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") in connection with a 1977 auto accident. State Farm counterclaimed for declaratory relief and removed the action to this Court. The case is before the Court on several motions, including State Farm's Motion for Summary Judgment. The Court heard oral argument on this motion on May 26, 1982.

The Court finds the following material facts to be undisputed: sometime prior to March 1, 1975, Plaintiff and her husband Levi Heflin purchased State Farm automobile insurance policy no. 6220 443–F15–11A. This policy named both Heflins as insureds.

Early in 1974, the Georgia legislature enacted the Motor Vehicle Accident Reparations Act, Ga. Code Ann. § 56–3401b *et seq.* ("the Act"). The Act, which was to become effective on March 1, 1975, required insurers to provide certain minimum no-fault coverage to all insureds, and to offer them higher optional levels of coverage as well.

After the enactment of the Act but before its effective date, State Farm conducted two mass mailings to its existing policy-

holders. Each mailing consisted of two documents. *See* Exhibits A & B to Affidavit of Homer Sandifer dated December 14, 1981 ("Sandifer Affidavit"). The first document was a brochure that explained the Act, and described the procedure whereby the policyholders could obtain the optional coverages; it instructed them to mark, sign and return the second document, a card entitled "Statement of Coverages as of March 1, 1975" (the "Coverages Card"). The brochure asked that policyholders who were satisfied with their present coverage merely sign and return the Coverages Card. Failure to return the Coverages Card, according to the brochure, would result in automatic purchase of the maximum optional coverage level of $50,000 unless the Act was amended before March 1, 1975. The exact language of the brochure is set out below.

State Farm addressed the November mailing to all policyholders in Georgia at the addresses those policyholders had provided to State Farm. Sandifer Affidavit at ¶ 5. The identical December mailing went to those Georgia policyholders who did not respond to the November mailing. *Id.* at ¶ 7. State Farm then compiled a list of those policyholders who failed to respond to either mailing, and instructed their agents to contact these policyholders to obtain their signatures on Coverages Cards. *Id.* at ¶ 8. Included on this list of unresponsive policyholders were "Heflin, Levi Hillard & [Plaintiff] Jessie Worthey," as holders of policy no. "6220 443." Exhibit B to Defendant's Second Reply Brief in Support of Motion for Summary Judgment. In mid-January, 1975, State Farm received a Coverages Card signed by Levi Heflin, dated January 15, 1975, electing optional no-fault coverage of $10,000. Exhibit A to Answer and Counterclaim. Levi Heflin has testified by affidavit that he did not sign the Coverages Card, nor did he authorize anyone to sign it for him. Affidavit of Levi H. Heflin dated January 7, 1982 at ¶ 4. The Court finds the authenticity of the signature to be a disputed issue of fact; the primary question discussed below is whether this issue of fact is material.

In reliance on the Coverages Card, State Farm added $10,000 no-fault coverage to the Heflins' policy effective March 1, 1975. The Heflins renewed their policy twice a year thereafter, purchasing $10,000 no-fault coverage in each case.

On August 5, 1977, Plaintiff suffered injuries in an automobile accident. Her expenses covered by no-fault exceeded the $10,000 no-fault coverage provided in the Heflins' policy. State Farm paid her $10,-000.

Four years later, the Georgia courts decided *Jones v. State Farm Mutual Automobile Co.,* 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed as improvidently granted,* 248 Ga. 46, 280 S.E.2d 837 (1981). By letter from Plaintiff's attorney to State Farm dated September 16, 1981, Plaintiff attempted to accept the "statutory continuing offer of optional benefits [discussed in] *Jones v. State Farm,*" and requested the maximum optional no-fault coverage. Exhibit C to Answer and Counterclaim. When State Farm refused to provide such retroactive coverage and to pay additional benefits, Plaintiff brought this lawsuit.

Plaintiff is one of many State Farm policyholders seeking retroactive insurance coverage in the wake of *Jones.* In another *Jones*-theory case, the Court has already decided that the Georgia courts would apply *Jones* prospectively only. *State Farm Fire and Casualty Co. v. Sweat,* F.Supp. No. C81–2056 (N.D. Ga. March 11, 1982). Plaintiff argues that her case differs from *Sweat,* however, because her policy predates the effective date of the Act. In *Jones,* the Georgia Court of Appeals interpreted the Act to provide a "continuing offer" penalty for insurer's violations of Ga. Code Ann. § 56–3404b(b), which requires certain separate signatures on applications for *new* policies after March 1, 1975. In *Sweat,* this Court held that the Georgia courts would apply this "continuing offer" penalty for violations of section 56–3404b(b) prospectively only. Plaintiff suggests, however, that despite her demand letter to State Farm she is not traveling under the *Jones* theory; because her policy predates

the Act, she does not seek to invoke the penalty for a violation of section 56–3404b(b), but rather seeks coverage to which she is entitled under section 56–3404b(a) and the 1974 Georgia insurance regulations for State Farm's failure to obtain a written rejection of the optional coverages from her as the holder of a policy existing on March 1, 1975.

To fully understand this argument, it is necessary to consider the sequence in which the Georgia legislature and Insurance Commissioner turned various pieces of no-fault theory into law in 1974 and 1975. As enacted early in 1974, section 56–3404b of the Act, which created the optional coverage sought by Plaintiff here, consisted of only two subsections. Section 56–3404b(a) required that "each insurer shall make available on an optional basis the following coverage: (1) an aggregate limit of benefits payable without regard to fault of $50,000 per person which may be rejected, or reduced ... by written consent of the policyholder." Section 56–3404b(b) provided the mechanism through which the insurer had to offer these optional coverages to applicants for new insurance policies; this mechanism was the "separate spaces" requirement made famous in *Jones.* The legislature neglected, however, to designate any procedure whereby the insurance companies would offer the optional coverages to holders of existing policies.

The Insurance Commissioner attempted to fill this gap by issuing transitional regulations on October 1, 1974. The regulations, which are Exhibit A to Plaintiff's Memorandum filed March 15, 1982, provided as follows:

> Prior to January 1, 1975, each insurer shall send their existing policyholders affected by the Act and this Regulation a mandatory offer of the optional additional coverages required to be offered by the Act and this Regulation, and an explanatory letter the same as or substantially similar to the letter contained in Exhibit B.

Ga. Code of Rules and Regulations § 120–2–28–.07(1)(a). The regulations did not fur-

ther specify the manner in which the insurer had to make the offer to its existing insureds, or the effect of a policyholder's failure to respond. However, the model "letter contained in Exhibit B" included the following passage:

> *IMPORTANT NOTICE:* IF YOU DO *NOT* DESIRE TO PURCHASE THESE ADDITIONAL OPTIONAL COVERAGES REQUIRED TO BE OFFERED TO YOU BY LAW, YOU MUST REJECT THESE COVERAGES IN WRITING IN THE APPROPRIATE SPACES INDICATED ON THE ENCLOSED "OFFER TO PURCHASE ADDITIONAL COVERAGE" OR THESE COVERAGES WILL BE ADDED TO YOUR POLICY AS OF MARCH 1, 1975 AND YOU WILL BE BILLED FOR AN ADDITIONAL PREMIUM.

Ga. Code Ann. § 56–3404b(a) and (b), plus this insurance regulation, comprised the entire relevant law regarding optional no-fault coverages in late 1974. It was in attempting to comply with these statutes and regulations that State Farm twice mailed Plaintiff brochures containing language "substantially similar" to the Insurance Commissioner's model letter; the State Farm brochure provided:

> IMPORTANT NOTICE
>
> If you do not desire to purchase these additional optional coverages required to be offered to you by law, you must reject these coverages in writing in the appropriate location indicated on the enclosed STATEMENT OF COVERAGES form or, unless the present law is amended, these coverages will be added to your policy as of March 1, 1975 and you will be billed for an additional premium.

Plaintiff argues that the alleged failure of Plaintiff or her husband to return the Coverages Card resulted in the provision by operation of law of the maximum optional coverage of $50,000. The Act itself, Plaintiff notes, required that the optional benefits be "made available" and could be rejected or reduced only by "written consent of the policyholder." The insurance regulation in substance required a notice to the

holders of existing policies that the maximum optional coverage would be added to their policies if they did nothing. State Farm itself informed its policyholders that they would receive the maximum optional coverages, "unless the present law is amended," if they did not return the Coverages Card. Plaintiff's argument is a persuasive one. The Court concludes that section 56–3404b(b), *Jones,* and *Sweat* are irrelevant to this case, which involves a pre-Act policy and an allegation that the insured never returned a Coverages Card.

If it were undisputed that the insured had returned a Coverages Card, State Farm would be entitled to summary judgment; it would have fully complied with the Act, and the insured would have properly rejected the maximum coverage in writing. In this action, of course, there is a dispute regarding whether State Farm received an authentic Coverages Card. State Farm nevertheless contends that Plaintiff is not entitled to additional coverage and benefits, even without reference to *Sweat,* for two reasons. First, it contends that the no-fault law *was* amended before March 1, 1975, by the addition of subsection (c) of section 56–3404b. Second, it contends that Georgia law imposes a legal duty on a policyholder to examine his policy upon receipt, and to reject it or renegotiate the policy if it does not provide the correct coverage.

In January 1975, after State Farm had twice mailed its brochure and Coverages Card to the Heflins but before the effective date of the Act, the Georgia legislature amended the Act. In an apparent attempt to remedy its earlier omission of any provision concerning existing policies, the legislature added Ga. Code Ann. § 56–3404b(c), which provides:

On and after the effective date of this Amendment, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer

to accept or reject the optional coverages required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided, however, that the failure of an insured to notify its insurer of his written acceptance or rejection within 30 days after written notice has been mailed to the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage.

State Farm contends that the addition of this subsection changed the effect of a failure to reply; under the terms of its proviso, the failure to respond within 30 days constitutes a rejection of the optional coverage and therefore State Farm is obliged to provide only the statutorily required minimum coverage of $5,000. State Farm's argument would be persuasive had it sent a further notice to the Heflin's "on and after the effective date of the Amendment,"[1] as required by subsection (c). However, State Farm does not contend that it sent the Heflins a notice after the effective date of subsection (c), and therefore its reliance on that subsection is misplaced.

State Farm's second argument concerns Plaintiff's legal duty to examine her policy and complain about incorrect coverages. It has long been the law of Georgia that an insured has a "legal duty to examine [her] contract, observe what coverage is provided . . . and, if the coverage was not correct, either reject the policy as written when tendered, or renegotiate [her] contract with the insurer." *Barnes v. Mangham,* 153 Ga. App. 540, 540, 265 S.E.2d 867 (1980), quoting *Georgia Mutual Insurance Co. v. Meadors,* 138 Ga.App. 486, 487, 226 S.E.2d 318 (1976). The insured is bound by the limits of coverage provided unambiguously in a policy, and the Court must enforce those limits. *Parris & Son, Inc. v. Campbell,* 128 Ga.App.

---

1. As enacted, subsection (c) began: "On and after the effective date of this Act." 1975 Ga. Laws 3, 4. The codified version refers to the effective date of "this Amendment." In either case, that date would appear to be March 1, 1975; the earliest it could be is January 23, 1975, the date on which the bill containing subsection (c) was signed by the Governor. Because State Farm's last mailing to Plaintiff occurred in December 1974, the Court need not and does not decide the effective date issue.

165, 171, 196 S.E.2d 334 (1973), quoting *State Farm Mutual Automobile Insurance Co. v. Sewell*, 223 Ga. 31, 32, 153 S.E.2d 432 (1967). Plaintiff's policy with State Farm unambiguously provided only $10,000 in no-fault coverage. She renewed it twice a year between March 1, 1975 and September 16, 1981, the date of her first complaint to State Farm of inadequate coverage. In fact, she accepted benefits of $10,000 after her 1977 accident. If this were a garden variety insurance case, Plaintiff would be unable to recover for coverage not provided for in her policy, because of her failure to exercise her *Barnes* duty to examine and renegotiate her allegedly inaccurate policy, and because *Parris & Son* prevents the Court from expanding the limits of coverage unambiguously provided in Plaintiff's policy.

This is not a garden variety insurance dispute, however. This dispute involves coverage under the Act, which the Georgia courts have singled out for special handling. *Jones* is the law of Georgia. *Jones*, of course, establishes a "continuing offer" penalty for failure of an insurer to obtain from new insureds statutorily proper rejections of the optional coverages; policyholders can accept the offer after their automobile accidents, and thus increase their coverage beyond that provided in their policies as written. This clearly indicates that the Georgia courts intend to suspend the usual rule of *Barnes* and *Parris & Son* with respect to subsection (b) of section 56–3404b. The Court must therefore decide whether a Georgia court would suspend *Barnes* and *Parris & Son* with respect to pre-Act applications.

Georgia courts have not addressed this question, of course. The issue is a difficult one. It is quite possible that the Georgia courts would simply extend the *Jones* reasoning to cases involving pre-Act applications, and suspend the rules of *Barnes* and *Parris & Son* with regard to such cases as well. On the other hand, the duty of the insured to examine the insurance contract and to renegotiate any incorrect coverages is an old and well-established element of Georgia law; it was a "familiar proposition[ ] of law" as early as 1904 that "when a policy of insurance, duly delivered to the applicant, differs materially from the kind of policy for which he applied, or intended to apply, it is his duty, if he does not desire to accept the policy issued to him, to return or offer to return the same." *Johnson v. White*, 120 Ga. 1010, 1010–11, 48 S.E. 426 (1904).

In *Jones*, the Georgia Court of Appeals established a new principle of insurance law by interpreting Ga. Code Ann. § 56–3404b(b) to implicitly abrogate *Barnes* and *Parris & Son*. However, it is a rule of statutory construction in Georgia that from the enactment of legislation "it may be presumed that the legislature intended some change in the existing law; but it is also presumed that the legislature did not intend to effect a greater change than is clearly apparent either by express declaration or by necessary implication." *C.W. Matthews Contracting Co. v. Capital Ford Truck Sales, Inc.*, 149 Ga.App. 354, 356, 254 S.E.2d 426 (1979), quoting *Undercofler v. Colonial Pipeline Co.*, 114 Ga.App. 739, 743, 152 S.E.2d 768 (1966). In light of this canon of construction, the Court believes that a dramatic change in the law such as *Jones* should be given narrow application, at least until the Georgia courts indicate their intention to extend it beyond subsection (b) to other sections of the Act. The Court therefore accepts State Farm's argument that Plaintiff's failure between March 1, 1975 and September 16, 1981 to examine and renegotiate her policy, which unambiguously set out no-fault coverage of $10,000, prevents her from obtaining benefits in an amount greater than $10,000.

The Court GRANTS State Farm's Motion for Summary Judgment. All other pending motions are DISMISSED as moot. The Clerk of the Court is DIRECTED to enter final judgment in favor of State Farm on the main clause and on State Farm's Counterclaim.

SO ORDERED, this 21st day of June, 1982.