William R. SHAVE, III, and Anne S. Shave, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY, Defendant.

Civ. A. No. 181–257.

United States District Court, S. D. Georgia, Augusta Division.

Sept. 23, 1982.

---

Thomas R. Burnside, Jr., and James B. Wall, Augusta, Ga., for plaintiffs.

Richard R. Mehrhof, Jr., Augusta, Ga., Thomas S. Carlock, R. Clay Porter, Atlanta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

This is a diversity action brought by the insureds under a policy of insurance issued by the defendant.

## I. BACKGROUND

Plaintiff William R. Shave, III signed and completed an application for insurance on February 25, 1965; a policy, which provided coverage for Mr. Shave and his wife and co-plaintiff, Anne S. Shave, was subsequently issued by the defendant and went into effect in March of 1965. In 1974 the Georgia Legislature passed the Georgia Motor Vehicle Reparations Act. Ga.Code Ann. § 56–3401b, *et seq.* The section of that Act which is pertinent to this case, Ga.Code Ann. § 56–3404b, provides in part:

- (a) Each insurer shall also make available on an optional basis the following coverage: [1] an aggregate limit of benefits payable without regard to fault up to $50,000.00 per person which may be rejected,· or reduced to not less than an aggregate limit of benefits payable without regard to fault of $5,000.00 per person, by written consent of the policy holder . . . .

\* \* \* \* \* \*

(b) Each application for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured.

(c) On and after the effective date of this Amendment, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages

required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute rejection of the optional coverage.

These provisions of the Georgia Motor Vehicle Accident Reparations Act became effective on or before March 1, 1975.

■■■ Plaintiff Anne S. Shave was injured in an automobile accident on October 8, 1975. Subsequently, in a letter dated September 30, 1981, the plaintiffs tendered an additional premium to the defendant for the express purpose of accepting a continuing offer of optional personal injury protection benefits which the plaintiffs assert was created by Ga.Code Ann. § 56–3404b as explicated in *Jones v. State Farm Mutual Automobile Insurance Co.,* 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed as improvidently granted,* 248 Ga. 46, 280 S.E.2d 837 (1981). Plaintiffs brought the present action to recover the difference between the maximum optional personal injury protection benefits which the plaintiffs assert they became entitled to by accepting the statutory continuing offer created by Ga.Code Ann. § 56–3404b ($50,000) and the benefits which they received from the defendant following the October 8, 1975 accident ($10,000). The defendant has made a counterclaim asserting that

[i]n the event it is determined that the plaintiffs are entitled under the Georgia Motor Vehicle Accident Reparations Act to retroactively accept optional personal injury protection coverages, the policy of insurance . . . should be reformed to reflect the true intent of the parties and coverage under said policy should be limited to the $10,000.00 personal injury protection coverage provided in said policy of insurance.

This matter is presently before the Court on defendant's motion for summary judgment.[1]

## II. ISSUES OF FACT

Under Rule 56, Fed.R.Civ.P., summary judgment is appropriate only if it is apparent that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The party seeking summary judgment bears the exacting burden of demonstrating that there is no factual dispute as to any material fact in the case." *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (F.5th Cir.1982). In assessing whether the movant has met his heavy burden, the Court must view the evidence in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). All doubts as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Hawkins v. Frick-Reid Supply Corp.,* 154 F.2d 88 (5th Cir.1946). Moreover, it must be recognized that "summary judgment may be inappropriate even where the parties agree on the facts, but disagree about the factual inferences that should be drawn from these facts.... If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Impossible Electronics,* 669 F.2d at 1031. (citations omitted)

■ The parties to this action agree that the policy which was in effect on October 8, 1975, the date of the accident in which plaintiff Anne S. Shave was injured, provided for personal injury protection coverage with a limit of $10,000, instead of the statutory minimum of $5,000.00. It is also uncontested that the original policy of insurance, which was issued to the plaintiffs after the plaintiffs applied for insurance in February of 1965, did not contain any reference to no-fault coverage. The parties differ, however, on the factual inferences which should be drawn from the presence of the $10,000 in coverage. The defendant claims that the fact that the plaintiffs' policy contained $10,000 in coverage conclusively establishes that optional coverages were made available and that the plaintiffs chose to accept $10,000 in coverage. The plaintiffs deny that they ever requested $10,000 in personal injury protection coverage and argue that the presence of $10,000 in coverage was the product of some unilateral act on the part of the defendant. The plaintiffs' position is supported by the fact that the defendant can find no record of any

1. As a preliminary matter, those grounds for summary judgment raised in the defendant's motion which are potentially dispositive but not related to the existence of the issues of fact discussed in the text of this order must be addressed. First, it is noted that the defendant claims that this matter is barred by the applicable statute of limitations. Under the rationale of the *Jones* decision, no contract for optional personal injury benefits in excess of $10,000 existed prior to the plaintiffs' acceptance of a continuing offer of such benefits through the letter of their attorney dated September 30, 1981. The statute of limitations, therefore, did not begin to run prior to September 30, 1981. I conclude that this case is properly brought as a timely action on a written contract, *see* Ga. Code Ann. § 3–705, and that defendant's statute of limitation argument is without merit.

Second, it must be recognized that several of the defendant's grounds for summary judgment were addressed in this Court's order in *Anderson Taylor v. Hartford Casualty Insurance Co.,* 545 F.Supp. 282 (S.D.Ga.1982) and that these matters can be disposed of under the reasoning of that case without great discussion. Specifically, the Court finds, in light of *Taylor,* that since the plaintiffs to this action have accepted the continuing offer created by Ga.Code Ann. § 56–3404b and have tendered the necessary premiums, the issue of "reformation," in regard to the resulting contract for optional coverage in excess of $10,000, is properly before this Court. It should be noted further that this Court determined in *Taylor* that the *Jones* decision itself should be applied retroactively and that the result mandated by the *Jones* decision is not constitutionally defective. After due consideration, I find that the defendant's constitutional arguments in this case are also without merit. *See Central Land Company v. Laidley,* 159 U.S. 103, 16 S.Ct. 80, 40 L.Ed. 91 (1895); *Exxon Corp. v. Busbee,* 644 F.2d 1030 (5th Cir.), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). The issue of retroactivity is discussed in footnote 4 *infra.*

request by the plaintiffs that their policy be altered to include $10,000 in coverage.[2]

The parties also disagree on the issue of whether the plaintiffs were sent notices concerning the availability of no-fault coverages. The defendant claims that it conducted two no-fault mailings to each and every named insured under its Allstate policies. The defendant claims that the first such mailing took place in December of 1974 and that the second mailing was completed in February of 1975. The plaintiffs have not conceded that such mailings were made and further claim that they do not recall receiving any information concerning no-fault coverage.

■ In an effort to show that no genuine issue of fact exists as to whether the mailings were made, the defendant has submitted the affidavit and deposition of Mr. Richard Willson, the employee who personally supervised and managed the mailings in question. These documents do tend to show that there is no real question as to whether the defendant conducted the two mass mailings. The plaintiffs' general denial that the mailings were made is conclusional and insufficient to raise a genuine issue of fact in this regard. There is, however, a genuine issue of fact as to whether the notices were actually sent to the plaintiffs. Given the potential for computer error (*Willson dep.* at 42–44) and the fact that the notices were sent out to fifty-eight to sixty-two thousand insureds (*Willson dep.* at 27), a real possibility exists that the notices were not sent to the plaintiffs in this action through some error. The potential for error is of particular significance in relation to the December of 1974 mailing, since Mr. Willson's deposition indicates that fewer safeguards may have been utilized in regard to that mailing. (*Willson dep.* at 44)

### III. MATERIALITY

Given the existence of the factual issues outlined above, it is necessary to determine whether such issues are material so as to preclude the granting of defendant's motion for summary judgment.

### A. THE PRESENCE OF $10,000 IN COVERAGE

In support of its motion for summary judgment, the defendant has cited the case of *Heflin v. State Farm Mutual Automobile Insurance Co.,* 547 F.Supp. 250, (N.D.Ga. 1982). In that case Judge Orinda Evans observed that Georgia law imposes a duty on a policyholder to inspect his policy and to reject or renegotiate the policy if it does not provide for the correct coverage. *Heflin,* C81–2168, at 247; *See Barnes v. Mangham,* 153 Ga.App. 540, 265 S.E.2d 867 (1980). Judge Evans noted that an insured ordinarily "is bound by the limits of coverage provided unambiguously in a policy, and [a] Court must enforce those limits." *Heflin,* C81–2168, at 250; *See Parris & Son, Inc. v. Campbell,* 128 Ga.App. 165, 171, 196 S.E.2d 334 (1973); *State Farm Mutual Automobile Insurance Co. v. Sewell,* 223 Ga. 31, 32, 153 S.E.2d 432 (1967). While conceding that the general rule concerning the duty placed on insureds was modified with respect to subsection (b) of Ga.Code Ann. § 56–3404b by the *Jones* decision, Judge Evans found that subsection (b) and the *Jones* decision were irrelevant to cases involving policies that were in effect prior to the effective date of Ga.Code Ann. § 56–3404b. Having stated that the *Jones* decision should be given narrow application and not be extended beyond subsection (b) to other sections of the statute, Judge Evans found that the plaintiff's failure in *Heflin* to examine and renegotiate her policy, which unambiguously set no-fault coverage at $10,000 prevented her from obtaining benefits greater than $10,000.

In this case, the deposition of plaintiff William R. Shave, III indicates that he was aware prior to October 8, 1975 that he had $10,000 in coverage (*dep.* page 11, 16). The policy containing that coverage was in ef-

---

**2.** The deposition of Mr. Richard Willson, the employee of the defendant who supervised and managed the mailing of the notices which the defendants sent out to its insureds concerning no-fault coverage, indicates that if a written request for optional benefits had been made, it would not have been purged from the plaintiffs' insurance file. (*Willson dep.* at 31–32).

fect prior to the effective date of Ga.Code Ann. § 56–3404b. Thus, under Judge Evans' rationale in *Heflin,* the issue of fact concerning the source of the $10,000 in benefits would not be material since this case deals with a pre-Act policy not affected by the *Jones* decision and since the plaintiffs' failure to question or renegotiate the $10,-000 in benefits, which at least Mr. Shave realized were provided for in their policy, would preclude the plaintiffs from receiving benefits in excess of $10,000 as a matter of law. This Court, however, is not bound by Judge Evans' decision in *Heflin. See Mueller v. Allen,* 514 F.Supp. 998, 1000–01 (D.Minn.1981); *Starbuck v. City & County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977).[3] After careful consideration, I find that I must respectfully part company with Judge Evans' analysis in this matter since I view the *Jones* decision to be entirely relevant to cases dealing with pre-Act policies.

 As the court noted in *Jones:*
[t]he legislative intent underlying the enactment of Code Ann. § 56–3404b is clear. The language of the statute is phrased in unequivocal terms: "Each insurer *shall* also make available... the following coverage;" "Each application... *must contain separate spaces* for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) above." (Emphasis supplied) This mandatory language leaves no doubt that the General Assembly placed strong significance upon

compelling insurers to offer no-fault coverages over and above the minimum basic coverage. The language used in Code Ann. § 56–3404b further enunciates the clear legislative mandate that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*

156 Ga.App. at 232, 274 S.E.2d 623. The *Jones* court construed Code Ann. § 56–3404b "as imposing an evidentiary burden upon no-fault insurers to demonstrate that optional coverages were expressly offered to, and knowingly accepted or rejected in writing by, each of their applicants for no-fault insurance." 156 Ga.App. 233, 274 S.E.2d 623. The *Jones* court further noted that "Code Ann. § 56–3404b clearly sets out the requirements that the application contain 'separate spaces' and that an applicant's rejection of optional no-fault coverages must be *in writing* as evidenced by his signature on 'separate spaces.'" *Id.* A form which is sent to an insured who is covered under a pre-Act policy, in order to allow that insured to purchase no-fault coverage, can only be viewed as an "application" for no-fault insurance. Thus, as Judge Murphy noted in his decision in *State Farm Mutual Automobile Insurance Co. v. Bates,* 542 F.Supp. 807, 822 (N.D.Ga.1982) "all policies [both pre-Act and post-Act] must comply with the separate signature requirement." [4]

---

**3.** In fact, this Court recently chose to differ with Judge Evans on the issue of whether the result mandated by the *Jones* decision should be applied retroactively. *See Anderson Taylor v. Hartford Casualty Insurance Co.,* 545 F.Supp. 282 (S.D.Ga.1982).

**4.** It should be noted that there are two exceptions to this general rule. First, as noted later in the text of this order, notice of the optional coverages required to be offered under subsection (a) of Ga.Code Ann. § 56–3404b which is given pursuant to subsection (c) of Ga.Code Ann. § 56–3404b(b) *and* "on and after the effective date" of that subsection, must include an application for no-fault coverage which contains separate signature spaces in compliance with Ga.Code Ann. § 56–3404b(b). An insurer,

however, is under no obligation to send notice pursuant to subsection (c) to an insured who *responded* to an offer of optional coverages prior to the effective date of that subsection. Thus, in the case of an insured who responded to an offer of the optional coverages described in subsection (a) of Ga.Code Ann. § 56–3404b prior to the effective date of Ga.Code Ann. § 56–3404b(c), compliance with the no-fault statute could be achieved without the execution of separate signatures by the insured.

The second exception is contained in the last sentence of Ga.Code Ann. § 56–3404b(c). That sentence provides that an insured's failure to respond within thirty days to an adequate notice made pursuant to subsection (c) of Ga. Code Ann. § 56–3404b [i.e., a notice which contains "separate spaces"] and given *on and*

It also must be recognized that subsection (c) of 56–3404b applies to more than policies in existence prior to March 1, 1975. *Id.* at 823. That subsection provides a corrective mechanism for all policies. As stated in the *Jones* decision:

> [i]f [an] application does not conform to the requirements of Code Ann. § 56–3404b(b), the insurer can meet its evidentiary burden by showing that it otherwise provided its no-fault insureds with "an opportunity to accept or reject, in writing, the optional coverages required to be offered under [Code Ann. § 56–3404b(a)]" in compliance with the provisions of Code Ann. § 56–3404b(c) and that the optional coverages were then effectively rejected.

156 Ga.App. at 233, 274 S.E.2d 623.

Subsection (c) of Ga.Code Ann. § 56–3404b is the source of the "continuing offer" which serves as the remedy for any lack of compliance with the statute or, more specifically, for any lack of compliance with the separate signature requirement of Ga.Code Ann. § 56–3404b(b). As Judge Murphy noted in his *Bates* opinion, *"Jones'* discussion of subsection (c) was not *dicta* but necessary to the resolution of the case and construction of the statutory framework." 542 F.Supp. at 823. Judge Evans' statement in *Heflin* that *"Jones* should be given narrow application, at least until the Georgia courts indicate their intention to extend it beyond subsection (b) to other sections of the Act[,]" C81–2168, slip op. at 9, reflects a misinterpretation of the *Jones* decision and a misreading of Ga.Code Ann. § 56–3404b. In order to give the statute effect, it is necessary to read subsections (b) and (c) of Ga.Code Ann. § 56–3404b together. The *Jones* decision dealt with the entire statutory framework, not just with subsection (b).

■ Given the above analysis, it is clear that Judge Evans' *Heflin* rationale is inconsistent with Ga.Code Ann. § 56–3404b, when that statute is read as a whole, and with the *Jones* decision. To place the duty on the insured to examine and renegotiate his personal injury protection coverage, when he has not been given the information which the statute requires the insurer to provide, would gut the statute. The general duty of insureds to examine and renegotiate their contracts was altered by the more specific language contained in Ga. Code Ann. § 56–3404b as explicated in the *Jones* decision. Judge Evans conceded this in her *Heflin* opinion, but argued that *Jones* only overrode the traditional rule in regard to subsection (b) of Ga.Code Ann. § 56–3404b. Since I view the *Jones* decision as going well beyond a narrow interpretation of subsection (b), I conclude that the *Jones* decision is entirely relevant to this and other pre-Act cases and that Judge Evans' *Heflin* analysis, therefore, cannot be applied here so as to preclude a recovery by the plaintiffs. Summary judgment, therefore, is not appropriate merely because the plaintiffs may have failed to examine their policy and to question the inclusion of $10,000 in benefits.

Once Judge Evans' *Heflin* analysis is rejected, it is clear that the issue of how the plaintiffs came to have $10,000 in coverage is a material issue. The materiality of this issue is particularly apparent when viewed in light of the effective date of subsection

---

after *the effective date of that subsection,* "shall constitute rejection of the optional coverage." Thus, an insured's failure to respond to a proper notice given pursuant to Ga.Code Ann. § 56–3404b(c) ends the insurer's obligations under the no-fault statute even though there is no written rejection of coverage.

It should be further noted that although I conclude in this order that the separate spaces or signature requirement of Ga.Code Ann. § 56–3404b(b) is applicable to notices made pursuant to Ga.Code Ann. § 56–3404b(c), I make no ruling on the issue of whether this conclusion, which I view as the necessary re-

sult of a careful reading of the statutory scheme contained in Ann. § 56–3404b, should be applied retroactively. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The application of the separate signature requirement to notices pursuant to Ga.Code Ann. § 56–3404b(c) involves some extension of the *Jones* decision and the path to my conclusion, like the path to so many conclusions in the realm of the *Jones* decision, was considerably darkened by the obfuscatory language utilized by the Georgia Legislature in composing Ga.Code Ann. § 56–3404b.

(c) of Ga.Code Ann. § 56–3404b. As originally passed by the Georgia Legislature in 1974, Ga.Code Ann. § 56–3404b did not contain subsections (c) or (d). The original provisions contained in the 1974 act were given an effective date of March 1, 1975. 1974 Ga.Laws 124. Subsection (c) of Ga. Code Ann. § 56–3404b was added along with subsection (d) by the 1975 Georgia Legislature. These amendments were to become effective upon their approval by the governor. 1975 Ga.Laws 4. Subsections (c) and (d) were approved by the governor on January 23, 1975. Thus, the effective date of subsection (c) was prior to the February of 1975 mailing, made by the defendant in this case, but subsequent to the notice distributed in December of 1974.

In order to appreciate the significance of this chronology, it is necessary to carefully examine the language of subsection (c) of Ga.Code Ann. § 56–3404b. Subsection (c) states:

> *On and after* the effective date of this amendment, all named insureds in existing motor vehicle liability policies *who have not previously responded* to an offer to accept or reject the optional coverage required to be offered by this Chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this section: Provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy, shall constitute a rejection of the optional coverage. (emphasis supplied)

Under the language of this subsection, the defendant would have been excluded from the obligation to give the additional notice mandated by subsection (c) if it had received a response from the plaintiffs to an offer of optional coverages made prior to January 23, 1975. More specifically, the defendant would have been excluded from the obligation to give the additional notice described in subsection (c), at the time subsection (c) became effective, if the plaintiffs had previously responded to the notice mailed by the defendant in December of 1974. The requirement of subsection (c) that insureds "be given an opportunity to accept or reject, *in writing,* [in compliance with the separate signature requirement of subsection (b) ] the optional coverages" (emphasis supplied) applies only to notices sent *on and after* the effective date of subsection (c). Thus, the factual controversy over whether the plaintiffs requested $10,000 in benefits and when they made such a request is extremely significant. If they responded to the December notice, then the February of 1975 notice was unnecessary; the defendant already would have been in compliance with the statute. If the plaintiffs responded to the February notice, then it must be determined whether the February notice gave the plaintiffs an adequate opportunity to accept or reject optional coverages *in writing* by complying with the separate signature requirement of subsection (b). The issues of whether the plaintiffs requested $10,000 in benefits and of when any such request was made must be settled at trial.

### B. WHETHER NOTICES WERE SENT TO THE PLAINTIFFS

At first glance, it appears obvious that the issue of whether or not the December of 1974 and February of 1975 notices were actually sent to the plaintiffs bringing this action is also a material one. The defendant argues, however, that actual proof of mailing to particular insureds is not necessary to establish compliance with Ga.Code Ann. § 56–3404b. The defendant argues that proof that it conducted mailings amounts to "substantial compliance" with the statute. Ga.Code Ann. § 102–102. After due consideration, I conclude that the mere fact that the defendant mailed out thousands of notices cannot be viewed as substantial compliance with the requirements of Ga.Code Ann. § 56–3404b with respect to the plaintiffs to this action. It is true that "[w]hen there is actual compliance as to all matters of substance then mere technicalities of form or variations in the

mode of expression should not be given the stature of noncompliance." *General Electric Credit Corp. v. Brooks,* 242 Ga. 109, 118–19, 249 S.E.2d 596, (1978). It cannot be argued, however, that failure to send notice to a given insured is not a matter of substance given the clear policies underlying the no-fault statute. *Jones* made it clear that Ga.Code Ann. § 56–3404b imposes an evidentiary burden upon no-fault insureds to demonstrate that optional coverages were expressly offered to each of their insureds in a manner consistent with the statute. 156 Ga.App. at 233, 274 S.E.2d 623. The question of whether or not the plaintiffs were sent notice is a question of fact which must be settled at trial.[5]

## IV. CONCLUSION

In considering a motion for summary judgment, it is not the function of this court to decide factual issues. The Court's only duty is to determine whether there is any issue of fact to be tried. Since it appears that genuine issues of material fact exist in this case, defendant's motion for summary judgment must be and is hereby DENIED.

---

**5.** While it is unnecessary to address the issue of whether actual receipt of the notice described in Ga.Code Ann. § 56–3404b(c) is required, it is clear that such notice must at least be "mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy. . . ." Ga.Code Ann. § 56–3404b(c).