40256. STAFFORD et al. v. ALLSTATE INSURANCE
COMPANY.

GREGORY, Justice.

Certiorari was granted to consider the opinion of the Court of Appeals in *Allstate Ins. Co. v. Stafford,* 166 Ga. App. 599 (305 SE2d 163) (1983). The trial court denied Allstate's motion for summary judgment. The Court of Appeals reversed, and we affirm the Court of Appeals.

The Staffords, husband and wife, are insureds under a policy of automobile insurance issued by Allstate effective September 23, 1973. This was prior to the effective date of the Georgia Motor Vehicle Accident Reparations Act (No-Fault). Ga. L. 1974, p. 113. The Staffords were injured in an automobile collision on June 12, 1978. The issue to be decided is the amount of no-fault insurance coverage the Staffords are entitled to under the policy. They contend coverage is $50,000 for personal injury protection under the provisions of OCGA § 33-34-5(c) (Code Ann. § 56-3404b). Allstate contends coverage is limited to $5,000.

In the trial court Allstate offered evidence in the form of the affidavit of the Service Division Manager of the company who supervised mailing of no-fault notices in February of 1975. He averred that the company, through his supervision, mailed a notice to all named insureds at the address shown in the policy by first class mail. The notice included a letter explaining the options available under no-fault coverages and a "Georgia No-Fault Optional Coverages" chart on the back of which a "Selection Form" was provided. Copies of the coverages chart and the selection form are shown in Appendix A to this opinion. The Staffords filed counter-affidavits denying receipt of the notice.

1. The Court of Appeals relied on its decision in *Wiard v. Phoenix Ins. Co.,* 166 Ga. App. 47 (303 SE2d 161) (1983). There the court analyzed OCGA § 33-34-5(c) (Code Ann. § 56-3404b) and held that an insurer had met its obligation to give the insured an "opportunity to accept or reject, in writing, the optional coverages" by making the following showing: "(1) [T]hat written notice of the optional coverages (2) bearing prepaid first-class postage and (3) directed to the insured at the address stated in the policy (4) was deposited in the United States mail." 166 Ga. App. at 49. We granted certiorari in *Wiard,* supra, and reversed, not because we differed with

the Court of Appeals' analysis of the four-part mailing procedure, but because we found the document mailed to the insured to be inadequate. *Wiard v. Phoenix Ins. Co.,* 251 Ga. 698 (310 SE2d 221) (1983). We held such a document must contain "(1) written information clearly stating the optional no-fault PIP coverage and the optional no-fault vehicle damage coverage, and (2) a means for the insured to make a written acceptance or rejection of each. Signatures, though acceptable, are not required. Mere blocks to be checked are sufficient." Id. p. 700. In the documents Allstate mailed the Staffords the optional coverages are set forth and provision made for selection by checking appropriate blocks. A blank space for the insured's signature is given at the bottom of the selection form. We hold the documents mailed to the Staffords meet the criteria of our decision in *Wiard,* supra. We further hold that OCGA § 33-34-5(c) (Code Ann. § 56-3404b) does not require actual receipt by the insured but only the four-part mailing procedure set forth above. We find no conflict in the evidence as to the issue of whether the insured was given an "opportunity to accept or reject, in writing, the optional coverages" as required by the statute. There is evidence of proper mailing of an adequate document. Actual receipt is not required and we hold that evidence of nonreceipt is not evidence of failure to mail. It was proper for the trial court to grant summary judgment to the insurer.

2. The Staffords contend it is a denial of equal protection under the United States Constitution for the legislature to require actual notice and opportunity for an insured in a new policy to accept or reject optional benefits as set out in OCGA § 33-34-5(b) (Code Ann. § 56-3404b) and interpreted in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983), but to merely require mailing of notice and opportunity to existing insureds under OCGA § 33-34-5(c) (Code Ann. § 56-3404b) as interpreted in Division One hereof. We note that, as to new insurance contracts, there is a necessity for contact by the applicant with the insurer. As to existing insureds, the insurer must make the contact. In the former situation the occasion for execution of a written application in the presence of the insurer is readily available. A conscious decision to acquire additional coverage at additional cost can be made. In the latter situation an opportunity for a personal contact by the insurer with the insured can at best only be invited by the insurer. We find the distinction between applicants for new policies and existing insureds a rational one in light of a legislative purpose to afford an opportunity for insureds to obtain optional coverages without imposing the coverage in the absence of a conscious choice. See *Allrid v. Emory University,* 249 Ga. 35, 38 (285 SE2d 521) (1982); L. Tribe, American Constitutional Law, § 16-2, p.

994 (1978).

3. The Staffords point out they made several appearances in the office of Allstate subsequent to the effective date of the no-fault statute and prior to the date of the automobile collision. They contend an offer of optional coverages should have been made during one of these visits. We do not find such a requirement in the statute. OCGA § 33-34-5(c) (Code Ann. § 56-3404b) applies to policies in existence on March 1, 1975. OCGA § 33-34-5(b) (Code Ann. § 56-3404b) applies to applications for policies beginning March 1, 1975. Each category of policies is governed by the respective requirements of the statute. Nowhere in the statute is there a requirement for an additional offer of optional coverages.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., who concurs in the judgment only, and Smith, J., who dissents as to Division 1 and the judgment.*

DECIDED JANUARY 20, 1984.

*James K. Lange,* for appellants.

*Dennis, Corry, Webb, Carlock & Williams, Thomas S. Carlock, R. Clay Porter, A. Martin Kent, R. Stephen Sims,* for appellee.

*Roger F. Huff, John E. James, James E. Butler, Jr., Alfred L. Allgood, Andrew W. Estes, Don C. Keenan, Lamar W. Sizemore, Jr., William S. Stone,* amici curiae.

APPENDIX A

# Georgia No Fault Optional Coverages

We are required to add the basic Personal Injury Protection (VA01) to all auto liability policies. In addition, we are required to offer additional Personal Injury Protection coverages. The required protection and the options are shown in the following chart.

**Personal Injury Protection Coverage Comparison Chart**

| Coverage | Aggregate Limit | Medical Limit | Wage Loss Limit | Funeral Limit | Survivors Limit | Services Limit | Average Annual Cost Per Private Passenge Vehicle |
|---|---|---|---|---|---|---|---|
| The following coverages provide benefits for you, your spouse, resident relatives, guest passengers and pedestrians in or struck by the insured vehicle | | | | | | | |
| VA01 | $ 5,000 | $2,500 | $200/Wk. | $1,500 | (1) | $20/Day | $12 |
| VA02 | $10,000 | (1) | (1) | (1) | (1) | (1) | 22 |
| VA03 | $25,000 | (1) | (1) | (1) | (1) | (1) | 32 |
| VA04 | $50,000 | (1) | (1) | (1) | (1) | (1) | 46 |

The following coverages provide benefits up to $5000 for guests and pedestrians and up to the limits shown for you, your spouse and resident relatives

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| VB01 | $10,000 | (1) | $200/Wk | $1,500 | $5,000 | $20/Day | 19 |
| VB02 | $25,000 | (1) | $200/Wk. | $1,500 | $5,000 | $20/Day | 22 |
| VB03 | $50,000 | (1) | $200/Wk | $1,500 | $5,000 | $20/Day | 25 |
| VB04 | $50,000 | (1) | $400/Wk. | $1,500 | $5,000 | $20/Day | 29 |

1) Subject to the aggregate limit

*Coverages VA02, VA03, VA04 are broader than coverages VB01, VB02, VB03, and VB04 and therefore are more expensive The "average cost per vehicle" column is designed to show the relative differences in cost and is accurate for the "average" situation. However, costs do vary according to such variables as place of residence, age of drivers, use of car, etc. and may be above or below the figures shown  Commercial vehicle rates will vary drastically due to territory and use classification differences  Therefore, no average annual cost is shown for commercial vehicles. For exact information on the cost for you, contact your Allstate agent or the nearest Allstate office  For Allstate Indemnity policyholders the cost would be 25% to 40% higher than the cost shown above

We are also required by law to offer the following coverages

1. Full coverage collision — other options are available.
2. Full coverage comprehensive
3. Rental Reimbursement (Loss of use coverage — $10 per day for a maximum of $300 )

**You can accept or reject the optional coverages by completing the Selection form on the other side and returning it to us. If we do not receive written notice of your acceptance or rejection within 30 days from the date we mailed this to you, it shall be considered as a rejection of the optional coverages.**

# "Offer To Purchase Additional Coverage" Selection Form.

It is not necessary to complete this selection form unless you want one or more of the optional coverages. If you do, please complete the entire selection form and return it to us in the enclosed envelope

The selection you indicate on this form will apply to all vehicles insured under your policy. If you would like to make selections for individual vehicles — or if you have any questions, please contact your Agent, the nearest Allstate office, or the Customer Service Department at:

Allstate Insurance Company
3585 Northside Parkway, N W
Atlanta, Georgia 30327

Phone (404) 266-9111

**(A) Personal Injury Protection (PIP)— Aggregate Limits**

1. ☐ I want only the minimum required by law, $5000 mandatory PIP — VA01
2. ☐ Add VA02 $10,000
3. ☐ Add VA03 $25,000
4 ☐ Add VA04 $50,000
5. ☐ Add VB01 $10,000
6. ☐ Add VB02 $25,000
7 ☐ Add VB03 $50,000 (including a Wage Loss Limit of $200 a week) to my policy
8. ☐ Add VB04 $50,000 (including a Wage Loss Limit of $400 a week) to my policy.

**(B) Physical Damage Coverage**

I Comprehensive Coverage (Select only one)
   1. ☐ Do not change my present Comprehensive Coverage
   2. ☐ I wish Full Comprehensive Coverage
Deductibles are available — Contact your Allstate Agent or the nearest Allstate office

II. Collision Coverage (Select only one)
   1. ☐ Do not change my present Collision Coverage.
   2. ☐ I wish Full Collision Coverage.
Deductibles are available — Contact your Allstate Agent or the nearest Allstate office.

III. Rental Reimbursement (Loss of Use Coverage)
   The cost is between $6 to $10 per vehicle.
   1. ☐ Do not change my Loss of Use Coverage.

2. ☐ I select the offer of Loss of Use Coverage.

Please add the coverages, if any, indicated above to my policy and adjust my premium accordingly. The coverages will become effective as of 12:01 a.m. on March 1, 1975, or the day after the postmark on the envelope in which this request is received by Allstate, whichever is later

Policyholder's Name _____ Policy No. _____

Address _____

City _____ State _____ Zip _____

Phone No _____ Date _____

Policyholder's Signature _____

*Allstate*

Allstate Insurance Company
Allstate Indemnity Company
Home Office Northbrook, Ill

X1147 Printed in U S A.

SMITH, Justice, dissenting.

In my view today's majority opinion is at odds with the spirit and intent of the Georgia Motor Vehicle Accident Reparations ("No-Fault") Act, our construction of the Act in the recent case of *Wiard v. Phoenix Ins. Co.,* 251 Ga. 698 (310 SE2d 221) (1983), and the general rules governing resolution of motions for summary judgment. I therefore dissent.

This appeal arises from the trial court's denial of Allstate's motion for summary judgment and the Court of Appeals' reversal of that ruling. In Georgia the parties opposing a motion for summary judgment (here the Staffords) are entitled to the benefit of all favorable inferences which can be drawn from the evidence, and all unfavorable inferences must be construed against the movant. *Burnette Ford v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971). Summary judgment should be granted only where it is affirmatively shown that a claimant would not be entitled to recover under any set of facts which could be proved at trial. OCGA § 9-11-56 (Code Ann. § 81A-156); *Frady v. Irvin,* 245 Ga. 307 (5) (264 SE2d 866) (1980).

In support of its summary judgment motion Allstate presented the affidavit of Richard Willson, an Allstate employee, who averred that the company in December of 1974 and February of 1975 conducted mass mailings of OCGA § 33-34-5(c) (Code Ann. § 56-3404b) notices of optional coverages to all existing named insureds. This affidavit does not say that Willson himself mailed a notice to the Staffords (in fact, it does not mention the Staffords by name), nor does it attempt to corroborate the alleged mailing to the Staffords by reference to a computerized listing of Allstate insureds or postal receipts of any kind. It is simply circumstantial evidence, in

the form of testimonial evidence by an Allstate employee, to the effect that notice was generally sent to Allstate policyholders. In reply, the Staffords each filed an affidavit denying receipt of the notice allegedly mailed by Allstate.

Today's majority opinion holds as a matter of law that the Willson affidavit describing the general workings of the mass mailing procedures proves that Allstate satisfied OCGA § 33-34-5(c)'s (Code Ann. § 56-3404b) notice requirement; hence, the Staffords are "deemed" to have rejected the optional PIP coverages "offered" them by Allstate. I disagree. Although Allstate's proof of compliance with the statute's mailing procedures (though weak) entitled it, on summary judgment, to a presumption of receipt by the Staffords, this presumption was rebutted by the Staffords' contrary proof, thus creating an issue of fact for the jury. See *Sturdivant v. Allstate Ins. Co.,* 143 Ga. App. 19 (2) (237 SE2d 408) (1977). In an analogous line of cases, the Court of Appeals has held that where an insurance company's proof that notice of cancellation of a policy was properly addressed and mailed is rebutted by a policyholder's affidavit alleging non-receipt, a jury question is made out. *Garber v. American Mut. Fire Ins. Co.,* 131 Ga. App. 366 (206 SE2d 86) (1974); *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597 (117 SE2d 239) (1960); *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376 (100 SE2d 142) (1957). A federal district court, faced with circumstances identical to the present case, has concluded that the issue of whether the policyholder actually received the notice required under OCGA § 33-34-5(c) (Code Ann. § 56-3404b) should go to the jury. "Given the potential for computer error . . . and the fact that the notices were sent out to fifty-eight to sixty-two thousand insureds . . . a real possibility exists that the notices were not sent to the plaintiffs in this action through some error." Shave v. Allstate Ins. Co., 549 FSupp. 1006, 1010 (S. D. Ga. 1982). For these reasons, and particularly in light of the fact that Allstate presented no direct proof that the notice intended for the Staffords was actually mailed to or received by them, I would hold that the trial judge was correct in denying Allstate's motion for summary judgment. See *Prudential Ins. Co. v. Franklin,* 51 Ga. App. 496 (180 SE 869) (1935) (evidence must "affirmatively show" that letter was properly addressed, stamped, and mailed before presumption of receipt arises); *Sturdivant v. Allstate Ins. Co.,* supra ("direct proof" of mailing required).

My position is, I believe, consistent with this court's interpretation of the No-Fault Act in our prior decisions of *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983) and *Wiard v. Phoenix Ins. Co.,* supra. In *Flewellen* we said that the intent of the legislature in enacting § 33-34-5 (Code Ann. § 56-3404b) was to make

certain that " 'insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*' " We also emphasized that "the mandate of the law was clear . . . [its] obvious purpose [was to make] the insured aware of the absolute right to minimum optional benefits." Id. at 714 (emphasis in original). More recently, this court in *Wiard* reasoned that OCGA § 33-34-5(c) (Code Ann. § 56-3404b) must be read in conjunction with subsection (b) of the statute, as construed in *Flewellen.* Accordingly we held that a *Flewellen*-qualified subsection (c) document necessarily consists of two parts: "(1) written information clearly stating the optional no-fault PIP coverage and the optional no-fault vehicle damage coverage, and (2) a means for the insured to make a written acceptance or rejection of each." *Wiard,* supra at 700.

Today's decision, however, emasculates both *Flewellen* and *Wiard* insofar as those decisions imply that both new applicants and existing policyholders are entitled to make a knowing, informed choice whether to purchase optional PIP coverage under OCGA § 33-34-5 (Code Ann. § 56-3404b). By interpreting Allstate's evidence of compliance with the mailing procedure outlined in subsection (c) as creating an irrebuttable presumption of receipt of the documents by the Staffords (and hence their rejection of the optional coverages), we slam the door of recovery on them and future claimants who never received the information required by the statute and who can prove that they never received it. This result is unjust and unnecessary. "To place the duty on the insured to examine and renegotiate his personal injury protection coverage, when he has not been given the information which the statute requires the insurer to provide, would gut the statute." Shave v. Allstate Ins. Co., supra at 1012. Because I cannot join this interpretation of the statute, I respectfully dissent.