**Andrew P. LANE, Plaintiff-Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant-Appellee.**

No. 84–8446.
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 19, 1984.

---

Larry D. Ruskaup, David P. Daniel, Rossville, Ga., for plaintiff-appellant.

R. Clay Porter, Thomas S. Carlock, Atlanta, Ga., for defendant-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

## CORRECTED OPINION

RONEY, Circuit Judge:

The issue before the trial court in this diversity action was whether the defendant insurance company properly mailed to the plaintiff insureds an offer of optional personal injury protection insurance coverage as required by Georgia insurance law. We affirm the district court's decision that the case is governed by *Stafford v. Allstate Insurance Co.*, 252 Ga. 38, 311 S.E.2d 437 (1984), and that the insurance company was entitled to summary judgment.

When enacted in 1974, Georgia's no-fault insurance statute included a requirement that automobile insurers make available to their policyholders optional personal injury protection coverage up to at least $50,000.00. O.C.G.A. § 33–34–5(a). The insurers were required to mail notice of these options to their existing policyholders.[1] Insureds who were not mailed proper notice that they could accept or reject the optional coverages are entitled to the full amount of the optional coverage. *Wiard v. Phoenix Insurance Co.*, 251 Ga. 698, 310

---

1. On and after March 1, 1975, all named insureds in existing motor vehicle liability policies who have not previously responded to an offer to accept or reject the optional coverages required to be offered by this chapter shall be given an opportunity to accept or reject, in writing, the optional coverages required to be offered under this Code section; provided, however, that the failure of an insured to notify his insurer of his written acceptance or rejection within 30 days after written notice of the offer has been mailed by the insurer, postage prepaid, by first class mail to the address stated in the policy shall constitute a rejection of the optional coverage.

O.C.G.A. § 33–34–5(c) (amended 1982).

S.E.2d 221 (1983). Such insureds may obtain coverage even for an accident that has already occurred by tendering the additional premium and filing proof of loss. *Southern Guaranty Insurance Co. v. Rowland,* 169 Ga.App. 554, 313 S.E.2d 753, 754 (1984); *see also Flewellen v. Atlanta Casualty Co.,* 252 Ga. 709, 300 S.E.2d 673, 676 (1983) (same under O.C.G.A. § 33–34–5(b)).

The parties stipulated to certain facts. On October 3, 1980, plaintiff was injured in an automobile accident while driving a car insured under an Allstate Insurance Company policy issued on June 17, 1969 to plaintiff's father. At the time of the accident, the stated limit of personal injury protection coverage under that policy was $5,000. Plaintiff incurred medical expenses of $23,491.47 due to his injuries in the accident. Those expenses combined with 85% of his lost income attributable to the accident exceed $50,000.00.

On November 24, 1981, counsel for plaintiff and his father tendered the premium due and demanded that Allstate afford plaintiff the benefit of $50,000 in personal injury protection coverage. Allstate paid the $5,000 policy limits but denied the claim for additional personal injury coverage.

The issue is whether the evidence foreclosed any issue of fact as to Allstate's compliance with the Georgia statute in giving notice of the optional coverage. Plaintiff and his father submitted affidavits stating that they did not receive any mailings from Allstate offering the optional personal injury protection coverage.

Allstate's evidence was an affidavit of one of its employees, Richard Willson, who was Allstate's Services Division Manager in 1974 and 1975. Willson's affidavit asserts that he supervised a mass mailing in February 1975 in which all of Allstate's named insureds were sent a package notifying them of the new coverage options. The package included an explanatory letter, an "Offer to Purchase Additional Coverage Selection Form," an identification card, and a return envelope. The material was sufficient to comply with the statute, if it was in fact mailed to the policyholders.

As to whether these affidavits are sufficient to foreclose an issue of fact as to Allstate's compliance with the Georgia statute, the federal diversity court is bound by Georgia law. Although sufficiency of the evidence is normally a federal question in a diversity case, the decision here turns not on sufficiency of the evidence to create an issue of fact, but on an interpretation of the Georgia statute. In *Stafford v. Allstate Insurance Co.,* 252 Ga. 38, 311 S.E.2d 437 (1984), the Supreme Court of Georgia considered an affidavit by Willson identical to the one submitted in this case and held that it constituted "evidence of proper mailing of an adequate document." 311 S.E.2d at 439. The court noted that actual receipt of notice by the insured is not required by O.C.G.A. § 33–34–5(c), and that evidence of nonreceipt is not evidence of failure to mail. *Id.* The court concluded that the Willson affidavit was sufficient to support the trial court's grant of summary judgment for the insurer. Having construed the Georgia statute to require no more than is evidenced by the affidavit, the Georgia court's decision constitutes Georgia law by which the federal court is bound.

Plaintiff contends, however, that in addition to Willson's affidavit there was deposition testimony that rebutted the evidence of proper mailing. Willson conceded that he did not personally mail notice to plaintiff's father and has no particular knowledge of correspondence to or from Lane.

Plaintiff points out weaknesses he perceives in the Allstate mass mailing: that the mailing went to 580,000 to 620,000 insureds, that mechanized equipment was used to fold and stuff the material in the notification package, that the addresses of insureds were generated by a computer printout programmed in Illinois, that the mailing operation took place over a two-day period with the computers running 24 hours a day, that the mass mailing caused Willson's department load to rise from its normal 25,000–45,000 mailings per day to 300,000 mailings per day, and that Willson concedes that he cannot say the machines never make a mistake. Allstate employees did not mail the envelopes, but Allstate contracted with a private courier service to

take the envelopes from Allstate offices to the post office.

Plaintiff argues that because Willson testified that 10 to 13% of the envelopes were returned to Allstate as undeliverable, a court could fairly assume that a large number of improperly addressed envelopes were neither returned to Allstate nor reached the addressee. Plaintiff contends that Willson's deposition testimony, which was not before the *Stafford* court, is sufficient to negate the general allegations in his affidavit, and that the deposition establishes that a proper mailing was not made.

Although plaintiff may have shown potential weaknesses in a mass mailing program such as the one conducted by Allstate, he has failed to provide any evidence that would overcome the obstacle presented by the *Stafford* decision. In *Shave v. Allstate Insurance Co.*, 549 F.Supp. 1006 (S.D.Ga.1982), a federal district court denied a defendant insurer's motion for summary judgment, relying on some of the same arguments that plaintiff now presents. The *Shave* court held that the Willson affidavit was not sufficient to establish proof of proper mailing. *Id.* at 1013–14. Two key factors in the court's decision were Willson's inability to testify that he personally mailed notice to the plaintiff in that case and the ample opportunities for computer or human errors inherent in mass mailings. *Id.* at 1010. *Stafford*, decided two years after *Shave*, implicitly rejects those arguments. Significantly, the dissenting opinion in *Stafford* indicates that many of the same criticisms of the Allstate mass mailing were considered and rejected by the majority:

> This affidavit does not say that Willson himself mailed a notice to the Staffords (in fact, it does not mention the Staffords by name), nor does it attempt to corroborate the alleged mailing to the Staffords by reference to a computerized listing of Allstate insureds or postal receipts of any kind. It is simply circumstantial evidence, in the form of testimonial evidence by an Allstate employee, to the effect that notice was generally sent to Allstate policyholders.

*Stafford*, 252 Ga. 38, 311 S.E.2d 437, 442 (Smith, J., dissenting). The *Stafford* dissent cited *Shave* for its recognition that Allstate's mass mailing contained potential for computer error. *Id.*

The plaintiff's characterization of the deposition testimony of Willson and his speculations from that testimony merely reiterate the same generalized criticism of mass mailing procedures adverted to in the *Stafford* dissent and relied on in the *Shave* opinion. The *Stafford* decision impliedly rejects such speculation. Unless the Supreme Court of Georgia modifies its position in *Stafford*, that decision can only be read to permit Allstate's evidence of compliance with the mailing procedure outlined in the Willson affidavit to satisfy the requirements of O.C.G.A. § 33–34–5(c), absent some more substantial proof that Allstate failed to mail notice to the particular insured claiming nonreceipt.

The district court properly granted defendant's motion for summary judgment.

AFFIRMED.