## 50298. STAMSEN v. BARRETT.

Argued March 10, 1975 — Decided May 16, 1975 — Rehearing denied June 18, 1975 —

*Greer & Klosik, John F. Daugherty,* for appellant.
*Richardson, Chenggis & Constantinides, John F. Davis, Jr., Richard L. Ormand,* for appellee.

Clark, Judge.

Stamsen claiming damages sustained from a fire which occurred in the adjoining premises of a multi-tenant store building sued Barrett alleging negligence arising out of defendant's ownership of the adjacent property.

Barrett owned both the adjacent parcel in which the conflagration had occurred and the property which plaintiff occupied. The neighboring parcel in which the fire had occurred was leased by Barrett to a partnership not here involved excepting that the parties appeared as witnesses for plaintiff. That partnership operated a beauty shop known as "Curl World." Stamsen's business was a print shop conducted under the trade name of "Minute Man Quick Copy." Each tenant had identically worded but separate and independent leases, the printed portions being a so-called "Form 58A Standard Commercial Lease Contract."

We will deal with pertinent portions of this form lease in the opinion. At the conclusion of plaintiff's case defendant Barrett moved for directed verdict in his behalf which he based on four grounds. In sustaining this motion the trial judge did not indicate which of the four grounds served as the basis for his ruling but particularly commented as to his "considering the documentary evidence." (T. 178). Three of the grounds were based on clauses in the lease agreement absolving or exonerating landlord from liability. This appeal is from a judgment denying plaintiff's motion for new trial. After consideration of each of the four grounds we have concluded the trial court erred in granting the defendant's directed verdict motion.

■ The first ground stated below and argued extensively on appeal is defendant's contention that

plaintiff's acceptance of the refund check containing release language on the reverse side or endorsement portion constituted a discharge of all claims and demands whatsoever, including this claim for negligence. The circumstances surrounding this check must be examined to determine if the facts here come within those authorities holding that endorsement and negotiation of a check containing release language apply to create an accord and satisfaction.

After the fire plaintiff wrote a letter to defendant as follows: "In accordance with paragraph twelve (12) of the above referenced lease, I am requesting refund of my rent deposit and the unearned portion of the rent money for July, 1973, beginning with the 13th day.

| "Deposit | $100.00 |
| Rent | 145.00 |
| | |
| Total Due Me | $245.00" (T. 182-B). |

In reply defendant sent plaintiff a letter which stated: "Enclosed is our check in the amount of $202.26, which is the rent and damage deposit refund less the electric bill ($42.74)." (T. 180). The front of the enclosed check read "Refund of rent and damage deposit, 2471-A1 Carroll Ave., Chamblee, Ga. 245.00 Less Elec. bill 42.74. This check 202.26." (T. 181). On the back of the check was typed the following language: "Endorsement of this check and in consideration of the sum hereby paid, acknowledges that all claims and demands whatsoever against J. C. Barrett and/or J. C. Barrett Construction Co., Inc. in connection with 2471-A1 Carroll Avenue, Chamblee, Ga., are hereby settled, released and forever discharged by the endorser." (T. 181).

Plaintiff testified his acceptance of the check was only for the purpose of terminating the lease. (T. 140). He contends his endorsement was in compliance with paragraph 12 of this lease contract. That paragraph reads "If premises are totally destroyed by storm, fire, lightning, earthquake or other casualty, this lease shall terminate as of the date of such destruction, and rental shall be accounted for as between Landlord and Tenant as of that date. If premises are damaged but not wholly destroyed by any of such casualties, rental shall abate in

such proportion as use of premises has been destroyed, and Landlord shall restore premises to substantially the same condition as before damage as speedily as practicable, whereupon full rental shall recommence." (T. 179).

The exchange of correspondence shows there was no dispute between the parties as to the refund amount owed by defendant landlord to the plaintiff tenant. The lease also confirms that defendant's request was in conformance with paragraph 12 in which the first sentence dealt with termination of the lease in the event of total destruction by fire. The evidence contained in the transcript shows that the amount stated in the check was the actual amount owed by landlord to tenant. There was no additional consideration of any kind—neither detriment nor benefit nor monetary sums—to support a release or discharge of "all claims and damages whatsoever."

Where a party receives no more than the amount legally owed and where at that time there is no dispute existing between the parties, then the absence of any additional consideration (such as settlement of a disputed account), causes the purported release to fail, it being a nudum pactum. *Carlton v. Western & Atlantic R. Co.,* 81 Ga. 531 (3) (7 SE 623). See also *Molyneaux v. Collier,* 13 Ga. 406 (11) and *Stovall v. Hairston,* 55 Ga. 9 (1).

The settlement here was limited to contractual claims arising out of the lease contract. This cannot be construed to constitute a release of a claim based on negligence of the defendant as to the adjacent premises with which plaintiff had no connection and which had not arisen out of the contract on which payment was made.

■ The other three grounds on which defendant obtained a directed verdict relied upon various clauses in the lease agreement between the parties absolving the landlord of certain responsibilities. These were (a) the landlord's maintenance duty was limited to keeping in good repair the roof, foundation, and exterior "of the premises"; (b) tenant accepted "the leased premises" in their present condition and agreed to keep them in good repair and to notify landlord of any defects in writing before landlord had any obligation; and (c) a hold

harmless and indemnification clause for damage claims "by reason of the use or occupancy of the leased premises."

A reading of these particular clauses shows in each instance that they dealt with the leased unit. We thus have a case which falls within the decisions of *Insurance Co. of N. America v. Gulf Oil Corp.,* 106 Ga. App. 382 (127 SE2d 43) and *Carlton v. Hoskins,* 134 Ga. App. 558. Both of these dealt with exculpatory clauses through which the landlord sought to escape any liability. In both cases our court ruled that proper construction of the lease agreement limited the application of such exonerating clauses to the leased unit. The facts in the first case were similar to that before us in that the fire originated in an adjacent bulk plant with destruction of a leased warehouse being the basis of the litigation. This court said at page 388 that "The negligence upon which the present suit is based was not negligence of Gulf as lessor in performing any duty with respect to the leased premises, but was committed outside the leased premises and had no relationship to the rights and duties created by the lease." In *Carlton v. Hoskins,* supra, we noted that "such exculpatory clause, although effective to release the lessor from liability for damages caused by a breach of his legal duties as landlord it will not relieve him from liability for negligence with respect to other legal duties owed the tenant not arising out of the lease relationship."

When one considers that a lease agreement is aimed at spelling out obligations as to items involved in control of the leased premises, the wisdom of the ruling that the exculpatory clauses are not applicable to adjacent premises with which tenant has no connection is clearly apparent. In effect, as to the "Curl World" premises, the plaintiff was an outsider whose claim would arise under that portion of Code § 61-112 whereby a landowner as a landlord "is responsible *to others* for damages arising from defective construction or for damages from failure to keep the premises in repair." (Emphasis supplied.) That fits the instant case where the tenant has sued his landlord for negligence arising out of legal duties claimed to be owed plaintiff by reason of defendant's ownership of the adjacent premises and not based upon the landlord-tenant relationship as to the leased unit.

■ Evidence here submitted as to the alleged negligence of the landlord was sufficient to create a question for determination by the jury. Accordingly, the trial court erred in directing a verdict for defendant.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*