39426. FLEWELLEN v. ATLANTA CASUALTY COMPANY.
39427. VAN DYKE v. ALLSTATE INSURANCE COMPANY.

CLARKE, Justice.

On its own motion this court granted certiorari in these cases to address the issue of the interpretation of OCGA § 33-34-5 (formerly Code Ann. § 56-3404b) by the Court of Appeals in this litigation, *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982) and that court's overruling of its prior decision in *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980), which interpreted the same statute.[1] The Court of Appeals consolidated the cases of Mrs. Flewellen and Mrs. Van Dyke and held

---

[1] These cases require an interpretation of the statute as it existed prior to the amendment in Ga. L. 1982, p. 1234.

that in each case the respective insurers had complied with the intent of the provisions of OCGA § 33-34-5 (Code Ann. § 56-3404b) governing optional benefits. We disagree with the statutory construction of the Court of Appeals and reverse the judgment in Flewellen, case no. 39426. For reasons set forth in this opinion, the judgment of the trial court in Van Dyke, case no. 39427, affirmed by the Court of Appeals is also affirmed by this court.

These cases begin with a basically simple dispute: are the insureds entitled to coverage of $5,000 or $50,000 for personal injury protection under the terms of their no-fault automobile insurance policies. Upon review of the arguments of the parties the question takes a quick turn toward issues of considerable complexity.

The insurers contend the statute fails to meet constitutional standards because of vagueness. They also assert that the insureds made valid rejections of the coverage above $5,000. Additionally, they contend that even if both of these arguments fail, the insureds in these cases are not entitled to the benefits of the Court of Appeals' holding in *Jones* because it should not be given retroactive effect and because there was an accord and satisfaction or release.

We will treat the issues involved by dividing the case into four divisions. The divisions will deal with interpretation of the statute as applied to these contracts, constitutionality of the statute, retroactivity and accord and satisfaction.

1. Central to the resolution of these cases is the meaning of the language in OCGA § 33-34-5 (Code Ann. § 56-3404b) and more specifically the language of subsection (b). Much has been said and written on the words of this sentence but we cite once again the subsection in its entirety for purposes of explanation. "Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) of this Code section and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured." OCGA § 33-34-5 (b) (Code Ann. § 56-3404b).

Chapter 34 of the insurance title is the Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 (Code Ann. § 56-3401b), more commonly referred to as "no-fault" insurance. The clear legislative intent of this chapter is to require all motor vehicle owners to carry no-fault insurance and to mandate that certain losses will be cheaply and expeditiously repaid without respect to fault. The mandatory no-fault coverage imposed on every motor vehicle owner is a minimum of $5,000 for personal injury protection. OCGA § 33-34-4 (Code Ann. § 56-3403b). The statute then proceeds to impose

upon every insurer the duty to offer certain coverage. This requirement appears in OCGA § 33-34-5 (a) (Code Ann. § 56-3404b) and is divided into two categories, personal injury protection (PIP) and property damage to the motor vehicle. The minimum which must be offered for PIP is $50,000, but the statute allows the prospective insured to reduce the coverage to not less than $5,000 per person. This reduction by the policyholder must be in writing and signed. Therefore, both the insurer and the policyholder face a minimum requirement. The insurer cannot offer less than $50,000 and the policyholder cannot accept less than $5,000.

To this point we have directed our attention to OCGA § 33-34-5 (a) (Code Ann. § 56-3404b). The immediate question is how many times and where must the policyholder sign in order to effect a reduction to an amount below the minimum which must be offered by the insurer.

Atlanta Casualty contends one signature at the end of the application is sufficient. Allstate says its form which contains one signature line adjacent to the options relating to PIP and one signature line adjacent to the options relating to property damage is sufficient if the appropriate rejection blocks are checked by the applicant and the signature lines are signed. The Court of Appeals attached appendices to its opinion in these cases showing the applications involved here and in *Jones.*

Van Dyke contends there can be no reduction of coverage unless there is a signature adjacent to every optional *amount* listed on the application showing either its rejection or acceptance.

To resolve the differences in these positions, we look to the plain words of the statute. OCGA § 33-34-5 (a) (Code Ann. § 56-3404b) requires "written consent" to either reject or reduce the coverage required to be offered. OCGA § 33-34-5 (b) (Code Ann. § 56-3404b) mandates that rejections or acceptances be accompanied by a signature, and it specifies the optional coverages to be those listed in subsection (a). The optional coverages listed there are PIP and property damage. See *Auto-Owners Ins. Co. v. Safeco Ins. Co.,* 245 Ga. 558, 561 (266 SE2d 175) (1981). We hold that the requirements of subsection (b) are satisfied by two signatures, one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage. The Allstate application and the manner in which it was executed and signed by Van Dyke meets these requirements. The Atlanta Casualty application completed by Flewellen does not.

We turn next to the effect of a failure to make a binding rejection or reduction. It has been argued by the insurers that this results in no contract of insurance at all. This argument relies on the language of

the statute which says that no policy will be issued unless the spaces are completed and signed.

The insureds argue that the offer of $50,000 coverage is a continuing offer and the policy is subject to reformation to include this coverage after a tender of the additional premiums for the additional coverage. We do not agree with either of the parties.

The contract must be construed in light of the statute. The statute says that $50,000 PIP coverage is the least the insurer must offer. OCGA § 33-34-5 (a) (Code Ann. § 56-3404b). The statute also says this offer of coverage may be refused only by a signed rejection in writing. OCGA § 33-34-5 (a) and (b) (Code Ann. § 56-3404b). In the absence of such a rejection, the policy, therefore, provides $50,000 PIP coverage from its inception. The insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party.

2. It is contended that the statute is unconstitutionally vague, violating due process, in that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *City of Atlanta v. Southern R. Co.,* 213 Ga. 736, 738 (101 SE2d 707) (1958). We are unable to discern an ambiguity and hold that the terms are sufficiently definite and certain in meaning to give proper guidance to those bound by its terms.

3. Atlanta Casualty next contends that if this court returns to the multiple signature requirement of *Jones,* that requirement should only be applied prospectively under the test in Chevron Oil v. Huson, 404 U. S. 97 (92 SC 349, 30 LE2d 296) (1971). In Chevron Oil, the United States Supreme Court held that in deciding a retroactivity question the court should:

(1) Consider whether the decision to be applied nonretroactively established a new principle of law, either by overruling past precedent on which litigants relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

(2) Balance of the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation.

(3) Weigh the inequity imposed by retroactive application, for, if a decision could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of nonretroactivity.

Under the first factor, it is contended that *Jones* was a case of first impression and the result of the case was not "foreshadowed"

due to the holding in *American Liberty Ins. Co. v. Sanders,* 120 Ga. App. 1 (169 SE2d 342) (1969) dealing with rejection of uninsured motorist coverage. The Code section interpreted there provided that the insured " 'shall reject the coverage in writing.' " *American Liberty Ins. Co. v. Sanders,* at p. 2. The court held that a signature at the end of the application satisfied the "in writing" requirement. Atlanta Casualty argues it justifiably relied on this precedent when issuing policies based upon an application which was in fact signed by the insured. We find this argument unpersuasive.

The Code section at issue here has different language than the one in *Sanders.* OCGA § 33-34-5 (a) (Code Ann. § 56-3404b) states a rejection or reduction must have the "written consent" of the insured and subsection (b) requires a signing of the rejection. If the legislature had *Sanders* in mind when drafting OCGA § 33-34-5 (Code Ann. § 56-3404b), then it clearly meant to ensure stronger requirements for rejection than "in writing."

Another facet of this argument is that even if the statute is clear in its multisignature requirement the remedy as set forth in *Jones* is not. *Jones* allows for acceptance of optional benefits after the insured has already been involved in an accident. It has been argued and the Court of Appeals states in its opinion that if the application violates the statute then the contract of insurance is void. An insurance policy "which contains any condition or provision not in compliance with the requirements of this title shall not be rendered invalid due to the noncomplying condition or provision but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy, rider, or endorsement been in full compliance with the title." OCGA § 33-24-12 (Code Ann. § 56-2418). The statute controls if a policy is inconsistent with insurance laws *Nelson v. Southern Guaranty Ins. Co.,* 221 Ga. 804 (147 SE2d 424) (1966), and statutory provisions are in fact a part of each policy. See *State Farm Mut. Auto. Ins. Co. v. Landskroener,* 150 Ga. App. 308 (257 SE2d 376) (1979).

Subsection (b) states that no policy shall be issued unless the statute is complied with. OCGA § 33-34-3 (Code Ann. § 56-3405b) makes it clear that while OCGA § 33-34-5 (Code Ann. § 56-3404b) is for optional benefits, those benefits as well as those in OCGA § 33-34-4 (Code Ann. § 56-3403b) are *required minimum benefits.* "Nothing in Code sections 33-34-4 and 33-34-5 shall be construed to prohibit the issuance of policies providing coverage more extensive than the *minimum coverage required by those Code sections.*" (Emphasis supplied.) OCGA § 33-34-3 (b) (Code Ann. § 56-3405b), "Policies purporting to satisfy the requirements of Code Sections 33-34-4 and 33-34-5 shall contain a provision which states that,

notwithstanding any of the other terms and conditions of the policy, *the coverage shall be at least as extensive as the minimum coverage required.*" (Emphasis supplied.) OCGA § 33-34-3 (c) (Code Ann. § 56-3405b). See also OCGA § 33-34-5 (c) (Code Ann. § 56-3404b).

In dealing with the second factor, we agree with the court in *Jones* that the intent of OCGA § 33-34-5 (Code Ann. § 56-3404b) is to ensure "that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*" *Jones,* at p. 232. The purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme.

The optional coverages required as a statutory minimum must thus be read into the policy. We will not as a remedy read in the missing signed consent of the insured as it is the insurer who has violated its legal duty.

In weighing the equities as required by the third factor, we do not agree that to require post-accident coverage results in substantial injustice. This finding follows from the holding that the mandate of the law was clear and the obvious purpose of making the insured aware of the absolute right to minimum optional benefits. There was no prior approval of the Atlanta Casualty forms. The law had been in effect since 1975, Ga. L. 1974, p. 113, and the insurer proceeded at its own risk in failing to comply with the statute when issuing this policy in 1979.

The insurer also contends that the court erred in *Jones* in allowing reformation of the contract to result in post-risk coverage. They first argue that if the contract is issued in violation of the statute the contract is void and that a void contract cannot be reformed. See *Patterson v. Professional Resources,* 242 Ga. 459 (249 SE2d 248) (1978). As we have already stated, when an insurer issues a policy with provisions not in compliance with the law the contract will not be rendered void but the provisions of the statute will be grafted into the policy.

The insurer next contends that because the policy, i.e., the contract, is no longer in effect it may not be reformed because under the continuing offer theory no contract is formed until the offer is accepted. Therefore, they argue that if Mrs. Flewellen made an acceptance in 1981, the contract is formed at that time and does not relate back to the time of the accident. See generally *Prior v. Hilton & Dodge Lumber Co.,* 141 Ga. 117 (80 SE 559) (1913); *Lunsford v.*

*Electric Paint &c. Co.,* 55 Ga. App. 96 (189 SE 285) (1936).

Our holding in Division 1 answers this complaint. We have already stated that the failure to reject the options in the manner provided in the statute results in acceptance of the minimum coverage required to be offered which is $50,000. The absence of a rejection forms a contract for $50,000 PIP from its inception. This is not a case for reformation but a case of interpretation. The only requirement for activation of all the terms of the policy is the payment of any additional premium due and filing of proof of loss as set forth in Division 1.

4. (a) Mrs. Flewellen signed a general release in her settlement with the tortfeasor. We hold that full release to others for all tort claims cannot be pled as a defense by the insured's own insurer where the insurer has violated a statutory duty to the insured under OCGA § 33-34-5 (Code Ann. § 56-3404b).

(b) Each of the nine drafts from Atlanta Casualty in payment of the $5,000 PIP benefits contained the following release language: "Endorsement of this draft constitutes a release of all claims, known or unknown, the undersigned has or may have against the payor and any other persons on account of any and *all claims arising out of the loss referred to on the face hereof."* (Emphasis supplied.) Each was endorsed by the insured. On the face of each draft there appears a description of the PIP benefits covered by that draft. The ninth draft states on its face that it is for "Final PIP lost income benefit."

The only PIP claim of Mrs. Flewellen which was arguably released in full by this language is her claim for lost income over $5,000. Her complaint alleges that she has incurred medical expenses of over $30,000. None of the drafts contains on its face a description of final or total payment for medical benefits.

We hold that the release language on the drafts does not release the claim for additional PIP benefits even as to the loss of income. Payment of these PIP benefits is of course made regardless of fault. There was no dispute as to the nature of Mrs. Flewellen's injuries nor as to the money owed her under her contract of insurance.

In *Matthews v. Gulf Life Ins. Co.,* 64 Ga. App. 112 (12 SE2d 202) (1940), the insurer paid the face amount of a life insurance policy and took a receipt which stated that the payment was " 'in full satisfaction and final settlement of all claims and demands existing under the within policy.' " *Matthews,* at p. 113. The court held this language did not bar a claim for double-indemnity benefits in the policy because the insurer only paid out what was admittedly due. "A receipt marked [paid] in full for all claims arising under an insurance policy may not be pleaded as an accord and satisfaction in full, where it further appears that the sum actually paid was an amount which the

company had already admitted owing and stood ready to pay in discharge of provisions of the contract other than those which are the basis of the recovery sought." *Matthews* (1), at p. 112. Additionally, it has been held that "Where a party receives no more than the amount legally owed and where at that time there is no dispute existing between the parties, then the absence of any additional consideration [such as settlement of a disputed account], causes the purported release to fail, it being a nudum pactum." *Stamsen v. Barrett,* 135 Ga. App. 156, 159 (217 SE2d 320) (1975).

This is not a case where an insurer has made a payment in settlement of a dispute as to the entitlement of the injured party to recover nor was there a dispute as to how much of a recovery was warranted. Atlanta Casualty merely paid what it admitted was owed to Mrs. Flewellen. Under the circumstances of this case, we hold the release is not effective to protect the insurer from liability for the additional PIP which may be owed under the no-fault optional benefit provisions.

Having found that Mrs. Flewellen is now entitled to enforce the optional benefits clause, we reverse the judgment of the Court of Appeals and hold that the trial court was correct in granting summary judgment to Mrs. Flewellen on this issue. Because of our holding in Division 1, the Court of Appeals judgment as to Van Dyke is affirmed.

*Judgment reversed in Case No. 39426. Judgment affirmed in Case No. 39427. Hill, C. J., Smith, Gregory and Bell, JJ., and Judge Joel J. Fryer, concur. Marshall, P. J., dissents. Weltner, J., disqualified.*

DECIDED MARCH 3, 1983 —
REHEARING DENIED IN CASE NO. 39426 MARCH 23, 1983.

*Beauchamp, Hedrick & Keenan, William H. Hedrick,* for appellant (case no. 39426).

*Alexander & Van, William C. Sanders,* for appellee.

*Owen J. Mullininx,* for appellant (case no. 39427).

*Thomas S. Carlock, R. Clay Porter, Martin Kent,* for appellee.

*G. Conley Ingram, Oscar N. Persons, Vickie Cheek Lyall, N. Forrest Montet, Gary L. Seacrest, Thomas S. Bentley, Edwin A. Tate, Karl M. Terrell, H. Andrew Owen, Timothy J. Sweeney, Eugene G. Partain, Robert M. Travis, Thomas D. Harper, William Lewis Spearman, James G. Jackson, John R. Rogers, James E. Butler, Jr., Alfred L. Allgood, Andrew W. Estes, Don C. Keenan, Lamar W. Sizemore, Jr., William S. Stone, Milton A. Carlton, J.*

*Franklin Edenfield,* amici curiae.

HILL, Chief Justice, concurring.

I concur in the opinion and judgment of the majority and commend its author and the other members of the court for working tirelessly to expedite this decision to assist the bench and bar in the resolution of cases such as these. See Gloser & Darroch, *"Jones v. State Farm:* An Expensive Lesson," 18 Ga. State Bar J. 180 (1982); Butler, *"Jones v. State Farm:* The Insured's Perspective," 19 Ga. State Bar J. 45 (1982).

I write to acknowledge Justice Clarke's special effort and to add one observation. In my view, the intent of the General Assembly in enacting paragraph (b) of OCGA § 33-34-5 (Code Ann. § 56-3404b), as noted in the majority opinion, becomes patently clear when paragraph (b) as originally enacted is read in context with paragraph (a) as originally enacted. Ga. Laws 1974, pp. 113, 117-118, read as follows:

"Section 4. Optional coverage. (a) Each insurer *shall* also *make available* on an optional basis the following coverage:

"(1) an aggregate limit of benefits payable without regard to fault up to fifty thousand dollars ($50,000) per person which may be *rejected, or reduced* to not less than an aggregate limit of benefits payable without regard to fault of five thousand dollars ($5,000) per person, *by written consent* of the policyholder. Benefits purchased in excess of five thousand dollars ($5,000) shall be paid without apportionment to cover any expenses enumerated in Section 3 (b); and

"(2) compensation, without regard to fault, for damage to the insured motor vehicle not to exceed the actual cash value of the vehicle at the time of the loss, including up to ten dollars ($10) per day with a maximum of three hundred dollars ($300) for the loss of use of such motor vehicle; provided that benefits payable under this paragraph (2) may be subject to deductibles at the *written election* of the policyholder.

"(b) Each application for a policy of motor vehicle liability insurance sold in this State must contain separate spaces for the insured to indicate his acceptance or rejection of *each of the optional coverages listed in subsection (a) above* and no such policy shall be issued in this State unless these spaces are completed and signed by the prospective insured." (Emphasis supplied.)

In my view, the General Assembly's amendment of paragraph (a) in 1975 (Ga. L. 1975, pp. 1202, 1206-1207) did not change the clear meaning of paragraph (b) as originally enacted and as applied to PIP and property damage.

Marshall, Presiding Justice, dissenting.

I must respectfully dissent for the reasons stated in the majority opinion of the Court of Appeals. *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982).