### 68571. PATE v. FEDERATED MUTUAL INSURANCE COMPANY.
(325 SE2d 831)

CARLEY, Judge.

In February of 1980, appellant-insured was injured in an automobile collision. He received $5,000 in basic no-fault benefits from the appellee-insurer.

On April 13, 1983, appellant's counsel sent a letter to appellee regarding the collision of February 1980. In this letter, appellant's counsel cited *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) and *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980). The letter continued: "Under the holding of these cases, please provide my client's application for insurance covering the time period of the accident. In the event the application cannot be located, or the application fails to provide a separate written rejection of the additional no-fault benefits, please

provide any document or writing which evidences your compliance with OCGA § 33-34-5. Please be further advised that my client wishes to accept the statutory continuing offer of optional benefits, and elects the maximum optional personal injury protection benefits of $50,000 as provided by the above cited cases. My client hereby tenders to Federated Insurance the total additional premium which he would have been required to pay to obtain the maximum optional personal injury protection benefits under his policy with you had such optional coverages been made available at the time the application was taken from the effective date of that insurance contract in force on the date of the accident until and including the date of the accident. Please let us know as soon as possible the amount of the premiums to obtain such benefits for the referenced time period and we will immediately remit said sum to you. Please accept this as my client's unconditional tender of such sums. We await only your specifications of the amount due to place the cash in your hands . . . . [O]ur demand is . . . $26,464.24 . . . . Please be advised that in accordance with the law, we expect to receive the above amount from you within thirty (30) days of your receipt of this letter."

On April 20, 1983, appellee's claims supervisor responded to the letter from appellant's counsel. Appellee's response to appellant's counsel contained the following: "This will . . . acknowledge that your client elects the maximum optional personal injury protection benefits as provided in the cases of *Flewellen v. Atlanta Casualty and etc.* The maximum additional personal injury protection coverage that will be available is $45,000 plus the basic coverage of $5,000 which has already been paid to your client. We also acknowledge your offer to tender to Federated Mutual Insurance Company the total premium required. We have requested our underwriting department to calculate this premium and we will be advising you of this amount very shortly. By return mail would you please provide me with verification from your client's doctors of his disability and also verification of his salary loss over and above that that has been reimbursed under basic coverage."

On April 22, 1983, the promised "follow up" letter was sent by appellee's claims supervisor to appellant's counsel. This letter contained the following: "This will follow my letter of April 20, 1983. Total premium due for additional PIP benefits in the maximum amount of $45,000 is $2,476. If your clients desire additional no-fault coverage we would ask that you please remit the above amount by return mail."

On June 8, 1983, appellant's counsel mailed a response enclosing appellant's check in the amount of $2,476. This letter stated: "This check is tendered to you as the required premium which you indicated in your letter dated April 22, 1983 . . . . Needless to say, we

expect the full amount of our demand in the amount of $26,464.24 within the time required by law." Appellee received this letter and the check on June 15, 1983.

However, on June 13, 1983, five days after the check had been mailed but two days before appellee had received it, appellee had mailed another letter to appellant's counsel. This letter stated that appellee had "now completed our research into the question of the additional PIP benefits being afforded to your client and wish to advise you of our position in this matter." In essence, the text of this letter stated that, because appellant's policy had been in existence "at the inception of no-fault coverage in Georgia," any issue regarding entitlement to optional no-fault benefits would be controlled by former OCGA § 33-34-5 (c) (Ga. L. 1975, pp. 3, 4) rather than the *Flewellen* decision. The letter further informed appellant's counsel that appellee had taken actions to apprise appellant of his right to obtain optional no-fault coverage under his existing policy, which actions it deemed to be in compliance with the requirements of former OCGA § 33-34-5 (c). The letter ended with appellee's statement that it would "maintain the position that no additional personal injury protection benefits are due . . . ."

When appellee's letter of June 13, 1983, was received, appellant's counsel wrote back and asserted that "[a]s a result of [the prior] transactions, there is now a contract for the additional coverage." Appellee's final response was to return appellant's check, repeating the statement that it would "maintain the position that no additional PIP benefits are due . . . ."

Appellant then instituted the instant lawsuit, seeking $26,464.24 in additional no-fault benefits, statutory penalties and attorney fees, and punitive damages. Appellee answered, denying the material allegations of the complaint. Subsequently, cross-motions for summary judgment were filed. After conducting a hearing, the trial court denied appellant's motion and granted appellee's. Appellant appeals.

1. The record clearly demonstrates that appellant has no entitlement to additional no-fault benefits under *Flewellen v. Atlanta Cas. Co.*, supra. See *Stafford v. Allstate Ins. Co.*, 252 Ga. 38 (311 SE2d 437) (1984). Compare *Enfinger v. Intl. Indem. Co.*, 253 Ga. 185 (317 SE2d 816) (1984).

2. Appellant further contends, however, that genuine issues of material fact remain regarding the allegation of his complaint that appellee had "contractually obligated itself" to provide him retroactive optional no-fault coverage. Appellant's contention in this regard is that appellee's communications of April 20 and 22, 1983, were an unconditional "offer" to provide that coverage in consideration of a specified premium, which unrevoked offer appellant then "accepted" on June 8, 1983, when his check for the specified amount was mailed

to appellee. See OCGA § 13-3-3. According to appellant, this "contract" would be enforceable against appellee notwithstanding any defense that it might otherwise have had to a claim for optional no-fault coverage under the policy pursuant to *Flewellen*.

As noted above, appellee's communications were precipitated by appellant's initial letter of April 13, 1983. In that letter, appellant specifically invoked the *Flewellen* decision, which provides: "The insured has the right to demand and receive the benefit of $50,000 coverage *upon* tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party." (Emphasis supplied.) *Flewellen v. Atlanta Cas. Co.,* supra at 712. Appellee asserts that its correspondence should not be construed as its unconditional "offer" to provide appellant retroactive additional no-fault coverage, because its letters were instead intended merely to provide appellant the information concerning the necessary terms of the preliminary tender, "upon" which tender appellant's demand for benefits pursuant to *Flewellen* would then ultimately have to be based. Therefore, according to appellee, appellant was merely being informed that in the event he wished to pursue a claim pursuant to *Flewellen,* it would be necessary for him actually to tender appellee $2,476, "upon" which tender and submission of verifications he would then have perfected his right to assert a demand for payment of optional no-fault benefits under *Flewellen.* Under this analysis, the mailing of the check to appellee would demonstrate no more than a perfected tender of premiums pursuant to *Flewellen,* an underlying demand for optional no-fault benefits under that decision, and the ultimate rejection of the *Flewellen* tender and demand.

Appellee's construction of its own communications is not wholly without reason. However, we cannot say, as a matter of law, that it is the only reasonable construction. Appellant was not specifically informed that the act of sending $2,476 would be considered by appellee as a mere preliminary tender under *Flewellen,* only after the receipt of which his demand for additional benefits would be considered for payment. In its communication of April 22, 1983, appellant was informed, without any further qualification or condition premised upon *Flewellen,* that "if" he "desired" retroactive additional no-fault coverage he should remit to appellee the sum of $2,476. We cannot say that such an unqualified and unconditional communication is not "reasonably susceptible to the construction that it amounts to an offer, and that it was intended as such by the party making it . . . ." *Wilson v. Martin,* 27 Ga. App. 549 (1) (109 SE 294) (1921). Accordingly, we hold that "[w]hether or not a contract [outside the ambit of *Flewellen,* supra] existed between the parties was a question of fact . . . ." *Wilson v. Martin,* supra at 550.

3. The grant of summary judgment in favor of appellee is re-

versed. The denial of summary judgment to appellant is affirmed.

*Judgment affirmed in part and reversed in part. McMurray, C. J., Sognier and Benham, JJ., concur. Deen, P. J., and Birdsong, P. J., concur in the judgment only. Banke, P. J., Pope and Beasley, JJ., dissent.*

DECIDED DECEMBER 5, 1984 —
REHEARING DENIED DECEMBER 20, 1984 — 

*David N. Rainwater*, for appellant.
*James B. Hamilton*, for appellee.

BEASLEY, Judge, dissenting in part.

The record shows without dispute that both parties were operating under the mistaken belief that *Flewellen* and *Jones*[1] applied to Pate's circumstances. That belief is unquestionably what prompted his attorney to write. He demanded coverage "under the holding of these cases." That belief is also what prompted the insurer to acknowledge coverage on the condition that the back premiums be paid. It responded: "This will . . . acknowledge that your client elects the maximum optional personal injury protection benefits *as provided in the cases* of *Flewellen* . . . ." (Emphasis supplied.) It went on straightaway to say that it would advise of the premium amount and that it would also need verification of disability and lost salary.

Later, referring to its first letter, insurer advised of the premium amount which was necessary "by return mail" if Tate wanted the additional coverage on the collision which had already occurred. He sent it over a month later, after insurer sent a letter advising that *Flewellen*-required coverage did not apply.

There being a mutual mistake as to the application of the law, how could the insurer be bound to a different set of circumstances? There are no facts from which the trier could find that both parties intended a contract even if *Flewellen* did not apply.

It would strain reason for the factfinder to conclude that the insurer intended to cover the collision which had already occurred and which the insured had not paid premiums for, in the event it was discovered during its processing of the case that because of salient dates *Flewellen* did not apply to force coverage.

That essential element of the contract, i.e., intention to cover even if *Flewellen* did not apply, which Pate claims existed, is missing conclusively. Similarly, the established facts could not support a finding that the insured could have believed, rationally, that in the ab-

---

[1] *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) and *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980). See OCGA § 13-5-4.

sence of *Flewellen*'s compulsion, he would be provided coverage retroactively for a consideration monumentally inferior to the sum he would receive.

I would affirm the trial court's grant of the insurer's motion for summary judgment. I agree with the majority, consequently, that the denial of summary judgment to Pate, the insured, should be affirmed.

I am authorized to state that Presiding Judge Banke and Judge Pope join in this dissent.