**COTTON STATES MUTUAL INSURANCE COMPANY and Shield Insurance Company, Plaintiffs,**

v.

**INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant.**

**Civ. A. No. C85–2367A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 12, 1986.

Oscar N. Persons, Alston & Bird, Atlanta, Ga., for plaintiffs.

Walton N. Smith, Lord, Bissell & Brook, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This case, which arose tangentially to the Georgia appellate courts' *Jones* and *Flewellen* line of decisions interpreting Ga.Off'l Code Ann. § 33–34–5(b) of the No-Fault Act, involves plaintiff automobile insurance carrier's claim under its professional service liability policy issued by defendant for coverage of the losses it suffered from so-called *Jones* liability claims. The matter is currently before the court on defendant's motion for summary judgment and plaintiffs' motion for partial summary judgment on the issue of liability.

## FACTS

On or about August 29, 1980, defendant International Surplus Lines Insurance Company ("ISLIC") issued insurance policy No. GP19241 to the plaintiffs, under which the plaintiffs were provided insurance company professional liability coverage for a period commencing August 1, 1980 and ending August 1, 1983.

Cotton States, as a Georgia insurance company, had been required since 1975 to provide no-fault automobile insurance coverage to its insurers pursuant to the Georgia Motor Vehicle Accident Reparations Act, Ga.Off'l Code Ann. §§ 33–34–1 to 33–34–14 (the "No-Fault Act"). (Complaint, ¶ 6; Answer, ¶ 6.)

For the purpose of informing insureds of the optional coverages available, Ga.Off'l Code Ann. § 33–34–5(b) requires certain information about the optional no-fault insurance coverage available pursuant to the No-Fault Act to be included in insurance application forms. (Complaint, ¶ 7; Answer, ¶ 7.)

Pursuant to such requirement, Cotton States prepared its application form as it understood the No-Fault Act to require but did not provide a separate signature line to confirm the choice of optional no-fault coverage.

On October 22, 1980, the Georgia Court of Appeals rendered its decision in the case of *Jones v. State Farm Mutual Ins. Co.,* 156 Ga.App. 230, 274 S.E.2d 623 (1980), holding that the No-Fault Act required application forms to include a separate signature line for each of the optional no-fault coverage amounts and that failure of the insurance company to obtain such separate signature resulted in a "continuing offer" by the carrier to provide optional coverage. This "offer" could be retroactively accepted by the insured even after an automobile accident. *Id.*

The Georgia Supreme Court granted certiorari in the *Jones v. State Farm* case, and heard oral argument, but in July, 1981, the Supreme Court dismissed its grant of certiorari as improvidently granted. *State Farm Mutual Ins. Co. v. Jones,* 248 Ga. 46, 280 S.E.2d 837 (1981). *See State Farm Fire & Cas. Co. v. Sweat,* 547 F.Supp. 233, 238 (N.D.Ga.1982).

Plaintiffs first received a demand for optional PIP benefits pursuant to the *Jones* decision (hereinafter "*Jones* claims") on or about August 6, 1981.

On or about December 23, 1981, plaintiffs filed a class action complaint in the Northern District of Georgia, Gainesville Division entitled *Cotton States Mutual Insurance Company & Shield Insurance Company v. J.O. Anderson, Jr., Individually and on behalf of all others similarly situated,* Civil Action File No. C81–164G, seeking declaratory and injunctive relief from the mounting number of *Jones*-type claims. By December 23, 1981, plaintiffs had received a total of 53 *Jones* claims for optional PIP benefits which were an estimated loss of $1,745,000 to plaintiffs.

ISLIC's Insurance Company Professional Liability Insurance, Policy No. GP19241 was cancelled effective October 18, 1982, pursuant to a policy endorsement.

On October 26, 1982, plaintiffs first notified defendant of claims being asserted against plaintiffs for optional PIP benefits under the *Jones v. State Farm* decision by letter. In response, ISLIC denied coverage based solely on its contention that each of

the claims involved failed to meet the policy's $250,000 deductible amount. (Stipulation filed May 16, 1986, Exhibit 1).

In December, 1982, the Georgia Court of Appeals met *en banc* and overruled its *Jones* decision in the case of *Atlanta Casualty Co. v. Flewellen,* 164 Ga.App. 885, 300 S.E.2d 166 (1982). That decision held that one signature on a no-fault application satisfied the statutory requirement.

On March 3, 1983, the Georgia Supreme Court decided the joint cases of *Flewellyn v. Atlanta Casualty* and *VanDyke v. Allstate Insurance,* 250 Ga. 709, 300 S.E.2d 673 (1983). The court held that in the absence of a signed rejection in writing as required by the No-Fault Act, a policy provides $50,000 PIP coverage from the time of its inception. *Id.* at 712, 715, 300 S.E.2d 673.

Cotton States notified ISLIC of the Supreme Court's *Flewellen* decision by letter. (Brief in Support, Exhibits 5 and 6). In response, ISLIC again denied coverage, again on the basis of its deductible. (Stipulation filed May 16, 1986, Exhibit 2).

Pursuant to the Georgia Supreme Court's *Flewellen* decision, Cotton States began to pay claims for additional PIP benefits asserted by those insureds whose applications did not meet the *Flewellen* requirements, no claims having been paid before that time. (Vickers Deposition, pp. 131–32).

In August 1983, Cotton States again advised ISLIC of its claim and its payment of *Jones/Flewellen* claims and invited ISLIC's advice in dealing with the insured loss. ISLIC again denied coverage upon the basis of its deductible defense. (Stipulation filed May 16, 1986, Exhibits 4 and 5).

ISLIC, so apprised of the requirements placed upon Cotton States by the Georgia appellate courts never objected to Cotton States subsequent payment of claims for additional PIP benefits or offered its advice

and assistance to Cotton States as respected the *Jones* claims, or sought to deny coverage under its professional service policy on any ground other than its deductible argument. (Complaint, ¶ 12; Answer, ¶ 12; Stipulation filed May 16, 1986, Exhibits 1–5).

Cotton States brought this action seeking indemnification for the losses caused Cotton States due to its failure to have provided its insureds a legally sufficient application as respects optional no-fault coverages as held required by appellate interpretation of the No-Fault Act, and contending such loss was caused by Cotton States' acts or omission in the performance of providing a professional service to its insureds.

The amount of Cotton States' loss approximated $3.8 million at the time of the suit. (Complaint ¶ 24). Cotton States' loss has subsequently exceeded $4 million. (Flanders Deposition, at 14–21).

The parties at oral argument stipulated that no genuine issues of material fact remain as to liability, and that this court may decide the liability issues raised in the parties' cross-motions for summary judgment as a matter of law.

## DISCUSSION

Defendant, in its motion for summary judgment, raises several defenses against plaintiffs' action on the policy. The court finds merit to defendant's contention that plaintiffs failed to give timely notice under the policy. The court therefore finds that summary judgment for defendant is warranted. Because this finding by the court resolves the parties' cross-motions for summary judgment, and because the other issues raised by the cross-motions are questions of contract interpretation idiosyncratic to these particular parties, the court feels discussion of the nondispositive issues is unnecessary.[1]

---

**1.** The court does not reach the issues of policy construction argued by the parties including whether (1) the adoption of a legally insufficient form constitutes a "professional service" under the policy, (2) the loss provision covers this

claim, and (3) the claim was "assumed" under the policy or on the other hand is a "penalty imposed by law" and therefore not covered under policy exclusions (f) and (b) respectively.

### 1. *When Notice Was Required Under the Policy*

Under the insurance policy issued by ISLIC to Cotton States, Section III entitled "Loss Provisions", paragraph (a) provides that the insured shall:

[U]pon notice of any claim or of an act or omission which could reasonably be expected to give rise to a claim hereunder, give immediate written notice thereof to the Company.

(Defendant's Brief, Exhibit A).

Defendant argues that plaintiffs were on notice of a potential claim as soon as the Georgia Court of Appeals decided the original *Jones* case on October 22, 1980, or alternatively that plaintiffs should have notified ISLIC immediately upon receipt of its first *Jones* claim on August 6, 1981. Defendant contends that, in any event, plaintiff should have notified ISLIC by December 23, 1981 when plaintiff filed a class action suit in the Northern District of Georgia, Gainesville Division involving 53 *Jones* claims made against plaintiffs. *Cotton States Mutual Insurance Company & Shield Insurance Company v. J.O. Anderson, Jr.*, C.A. No. C81–164G.

Cotton States counters ISLIC's contentions on the notice issue with two primary arguments. First, Cotton States contends it exercised reasonable diligence under the attending circumstances, and therefore, that its notice was timely. *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga.App. 714, 719, 209 S.E.2d 6 (1979). In that case, the court reiterated the familiar judicial construction that the term "immediate" means with reasonable diligence and within a reasonable length of time under the circumstances. *Id.* at 719, 209 S.E.2d 6. Furthermore, in determining what is reasonable diligence and reasonable time the courts will examine the insured's explanation for delay in giving notice.[2]

Specifically, plaintiff argues that given the litany of litigation following the decision in *Jones*, and the uncertainty and confusion caused thereby, notice in October 1982 by Cotton States to ISLIC was given within a reasonable time.

In order to resolve this issue, the court must (1) look to the language of the policy and the course of litigation surrounding Code § 33–34–5(b) to determine when a claim under the ISLIC policy arose which would have required notice by Cotton States, and (2) decide whether Cotton States' actual notice was made with reasonable diligence under the circumstances. *Bituminous Casualty, supra.*

In retrospect, by viewing the *Jones* cases chronologically, the "flip-flops" of the Georgia state courts in interpreting Ga. Off'l Code Ann. § 33–34–5(b) tend at first blush to support Cotton States' position. However, careful reading of the language of the notice provision contained in the policy coupled with a close examination of the *Jones* line of cases compels the opposite conclusion.

■ The first *Jones* case was decided by the Georgia Court of Appeals in October 1980 and the Georgia Supreme Court granted certiorari. However, in July 1981 the Supreme Court dismissed this grant of certiorari as improvidently granted. *State Farm Mutual Insurance Co. v. Jones Supra.* At that time with all further avenues of appeal in the *Jones* litigation closed, the law was settled as to the number of signatures required on a non-fault insurance application form. Cotton States has failed to show it had any reason to believe that this holding would be reversed. In fact, as far as any party could ascertain the law was settled on this point until December 1982, when in *Atlanta Casualty Co. v. Flewellen, supra* the Georgia Court of Appeals met *en banc* and overruled its original *Jones* decision. Therefore, after dismissal of certiorari liability became a distinct possibility throughout the insurance industry for those carriers who had failed to provide

---

2. However, where there is a clear and unmistakable provision for forfeiture upon the insured's nonobservance of the letter of the particular requirement, the insurer will be entitled to avoid liability. *Id.* at 719, 209 S.E.2d 6. The policy at issue here does not suffice in this regard.

a separate signature line with respect to optional no-fault coverage. The only remaining question was how individual policy application forms of other insurers than State Farm would be treated by the courts.

In August 1981, the first *Jones* claim was filed against Cotton States. By December 1981 no less than 53 *Jones* claims were pending against Cotton States. At that time, Cotton States sought declaratory judgment from the United States District Court because as plaintiffs stated in their class action complaint "[Cotton States was] in a substantial position of uncertainty and risk ..." with respect to its *Jones* claims. Class Action Complaint, ¶ 17, *Cotton States Mutual Ins. Co. and Shield Ins. Co. v. J.D. Anderson*, C.A. No. C81–164G. As previously mentioned, under its policy with ISLIC Cotton States was to give immediate written notice of "any claim or act or omission *which could reasonably be expected to give rise to a claim.*" (Emphasis supplied). Although the court finds persuasive the argument that a claim against ISLIC under the policy could have been reasonably expected at the time the Supreme Court dismissed its grant of certiorari in *Jones* or at the time of the first *Jones* claim against Cotton States, certainly the notice requirement was triggered when Cotton States filed its class action in federal court to determine its rights and obligations to its *Jones* claimants.

At that time, the omission by Cotton States in providing a legally insufficient application form could reasonably have been expected to create a claim under the policy. In a different context, the Georgia Supreme Court recognized that while the "'mandate of the law was clear,' its interpretation by the bench, bar, insurers and insureds was obviously less so." *Cotton States Mutual Ins. Co. v. McFather*, 251 Ga. 739, 309 S.E.2d 799 (1983). However, it is precisely this perceived uncertainty and risk in the wake of the Court of Appeals' *Jones* decision and the Supreme Court's dismissal of certiorari that triggered the requirement that Cotton States provide ISLIC with notice under the policy language.

Secondly, Cotton States contended at oral argument that this court, in deciding when notice should have been given, should look to the Georgia Supreme Court's holding in *Cotton States v. McFather, supra.* In that case, the court held that insurance companies should not be subjected to statutorily imposed "30/60 bad faith" penalties under Ga.Off'l Code Ann. § 33–34–6(b), (c) for failing to pay *Jones* claims during the period after the original *Jones* decision and before *Flewellen* was decided by the Georgia Supreme Court. Analogously, Cotton States contends that notice to ISLIC was required only upon the Supreme Court's *Flewellen* decision.

The court finds this argument unconvincing. The statutory rule for "bad faith" penalties offers no guidance for the interpretation of the contractual notice requirements in Cotton States' policy. The date of the Supreme Court's *Flewellen* decision may provide an equitable benchmark from which the 30/60 day bad faith penalties should run. However, where the language of a professional service liability policy requires "immediate notice" of a claim that could "reasonably be expected to arise" from a particular act or omission, the date of *Flewellen* is the wrong measure. The Supreme Court's pronouncement in *Flewellen* eventually became the final word on *Jones* liability, establishing the *certainty* of liability for noncompliant automobile insurance carriers. The policy language in question here requires notice not at the time a claim is certain, but rather at the time a claim against Cotton States could "reasonably be expected to give rise to a claim ..." under its ISLIC policy. As a matter of contract interpretation, the court finds that because a claim by Cotton States under the ISLIC policy could reasonably have been expected to arise at the time of Cotton States' class action in *Cotton States v. J.O. Anderson, Jr., supra,* a time when 53 *Jones* claims were pending against Cotton States, the immediate notice provision was triggered in December, 1981.

## 2. Timeliness of Notice

Now the court must decide whether Cotton States' notice on October 1982 was timely. The policy language requires "immediate written notice" and compliance with this requirement is a condition precedent of coverage under the policy. Georgia courts hold that such a requirement is met as long as notice is given "with reasonable diligence and within a reasonable length of time in view of attending circumstances of each particular case." *Bituminous Casualty supra.* Nevertheless, there are parameters to this reasonableness inquiry. The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law. *Dillard v. Allstate Ins. Co.,* 145 Ga.App. 755, 245 S.E.2d 30 (1978); *Stonewall Insurance Company v. Farone,* 129 Ga.App. 471, 199 S.E.2d 852 (1973); *Bituminous Casualty, supra.* Furthermore, Georgia courts have held that a valid excuse does not include the insured's conclusion "that [it] was free of fault and that there was no liability to the other party. That is the very issue which the company must have reasonable opportunity to investigate with promptness, and which requires a prompt notice of the occurrence." *Bituminous Casualty, supra cited in Richmond v. Georgia Farm Bureau Mutual Ins. Co.,* 140 Ga.App. 215, 231 S.E.2d 245 (1976).

■ Here, Cotton States contends that it was uncertain about the applicability of *Jones* to its insured. This uncertainty Cotton States contends excused its ten-month delay. The court disagrees. ISLIC was foreclosed from any involvement in Cotton States' *Jones* liability by the ten month delay based only on plaintiffs' judgment either that it owed no *Jones* liability to its insureds, or that it was unsure of whether such liability existed. Under Georgia law,

such a belief by Cotton States does not serve as a valid excuse for late notice. *Id.*

Having already found that plaintiffs' allegation of confusion and uncertainty in interpreting Code § 33–34–5(b) did not relieve Cotton States of its contractual duty of notifying ISLIC when a claim against it could reasonably have been expected, the court finds that defense does not excuse a ten month delay in giving that notice. The court finds that the *Jones* decision was settled law for notice purposes until the Court of Appeals reversal in its *Flewellan* decision, and in light of the "immediate notice requirement of the policy Cotton States' alleged "uncertainty" provides no valid excuse for the ten month delay between the filing of Cotton States' class action in *J.O. Anderson* in December 1981 and the actual notice given ISLIC in October 1982.[3]

## 3. Prejudice

■ In plaintiffs' combined brief Cotton States argues that ISLIC suffered no prejudice by the timing of their notice, and therefore, that ISLIC may not deny coverage due to late notice by plaintiff. (Plaintiffs' Brief at 26) At oral argument, counsel for Cotton States refined this argument by contending that whether ISLIC was prejudiced by the timing of Cotton States' notice actually addressed the question of whether notice was "reasonable." In either formulation, the court rejects plaintiffs' argument.

Georgia courts have repeatedly held that prejudice is irrelevant because the failure to give timely notice is the failure of a condition precedent to coverage under the policy, and that failure alone voids coverage. *See Bates v. Holyoke Mut. Ins. Co. of Salem,* 171 Ga.App. 164, 318 S.E.2d 777 (1984), *aff'd* 253 Ga. 697, 324 S.E.2d 474 (1985); *Bituminous Casualty Corp. v. J.B. Forest & Sons, Inc.,* 132 Ga.App. 714, 209 S.E.2d 6 (1975); *Wolverine Ins. Co. v. Sor-*

---

**3.** The court finds no merit whatsoever in plaintiff's argument that because ISLIC has shown no prejudice caused it by Cotton States' late notice,

a ten-month delay in giving notice is somehow more reasonable. *See* discussion *infra.*

*row,* 122 Ga.App. 556, 177 S.E.2d 819 (1970).

Indeed, in *Richmond v. Georgia Farm Bureau Mutual Ins. Co. supra,* the court held as a matter of law that the insureds failure to give notice of a possible claim until eight months after the incident was unreasonable and voided coverage of the incident. The court said the insurer was relieved of its duties under the policy regardless of whether it demonstrated how it was prejudiced by the failure to give timely notice. Furthermore, the court concluded that prejudice was *inherent* in the lapse of time in that the opportunity to influence the claim was lost. *Id.*

Accordingly, this court rejects Cotton States' argument that lack of prejudice shown negates ISLIC's defense that plaintiff failed to give timely notice. Because the court finds Cotton States' late notice to be unexcused, the failure of ISLIC to show prejudice caused does not enhance the reasonableness of Cotton States' notice. *Cf. Weis v. International Ins. Co., Inc.,* 567 F.Supp. 631, 637, n. 3 (N.D.Ga.1983) ("where a factual issue exists as to the reasonableness of the insured's delayed notice, then evidence of prejudice to the insurer is relevant to a determination of this issue." Indeed, the court finds that prejudice was inherent in the *ten-month* delay by Cotton States in giving notice to ISLIC.[4]

### 4. *Estoppel*

█ Plaintiff argues that ISLIC's failure to complain as to the timeliness of plaintiff's notice within a reasonable time estops its timeliness-of-notice defense. (Plaintiffs' Brief at 26). Cotton States contends that ISLIC responded to its claim on three separate occasions denying coverage solely on the basis of its deductible argument. Cotton States contends that having accepted its notice without complaint, ISLIC is now estopped from asserting late notice as a defense. This is not the law in Georgia.

**4.** Timely notice would have allowed ISLIC several opportunities that were foreclosed to it by late notice including (1) the opportunity for

In *Buffalo Insurance Co. v. State Photo Finishing Co.,* 120 Ga.App. 697, 708, 172 S.E.2d 159, 166–67 (1969), the Georgia Court of Appeals recited the Georgia rule as follows:

It is the well settled rule in this state that, where notice of loss or injury ... has not been given or furnished in accordance with provisions of the policy requiring the same as condition(s) precedent to liability the company's subsequent refusal to pay because of non-compliance with such provision(s) or for some other reason, will not estop the company from setting up as a defense the failure of the insured to make such reports.

172 S.E.2d at 166–167. *See also Eason v. Weaver,* 557 F.2d 1202, 1206 (5th Cir.1977) (finding under Georgia law that estoppel as to policy defenses applies only where an insurer undertakes to defend and fails to reserved a policy defense, not where an insurer refuses to defend or by implication denies coverage).

Therefore, the court finds that ISLIC's previous denials of coverage under its policy for reasons other than late notice do not estop ISLIC from raising the Cotton States' late notice as a policy defense. Because timely notice as specified under the policy is a condition precedent for coverage and such condition was not met, the court GRANTS ISLIC's motion for summary judgment.

ISLIC to advise Cotton States in interpreting the law, (2) the handling of its *Jones* claims, or (3) the court defense of its *Jones* claims.