41955. PRITCHARD et al. v. ALLSTATE INSURANCE
COMPANY.
(328 SE2d 362)

WELTNER, Justice.

We have received from the United States Court of Appeals for
the Eleventh Circuit the following certified question: "Viewed in con-
junction, did the December, 1974 and February, 1975 notices sent by
Allstate fully comply with the provisions of the No-Fault Insurance
Act, O.C.G.A. § 33-34-1, *et. seq.*; and, if so, did lack of response to the
first notice create a contractual obligation for Allstate to provide ad-
ditional PIP coverage of $45,000 which was not abrogated by a failure
to respond to the second notice?"

Prior to 1974, Allstate issued an automobile liability insurance
policy to Emma Lou Payne. In December 1974, subsequent to the
1974 enactment of the Motor Vehicle Reparations Act, OCGA § 33-
34-1 et seq. (the "No-Fault Insurance Act"), and pursuant to Georgia
Insurance Department Regulations (Chapter 120-2-28), Allstate
mailed all policyholders several documents pertaining to no-fault cov-
erage and optional benefits. Included in these documents was a notice
which stated in part: "We are required by law to: (1) offer additional
personal injury protection coverages and (2) unless you reject it in
writing add the aggregate limit of $50,000 to your policy as of March
1, 1975, at an additional cost. You can reject this coverage by using
the form on the other side."

An accompanying letter stated in boldface type: "Important no-
tice. If you do not desire to purchase the additional optional cover-
ages required to be offered to you by law, you must reject these cover-
ages in writing in the appropriate space indicated on the enclosed
'Offer to Purchase Additional Coverage' or *unless the present law is
amended,* these coverages will be added to your policy as of March 1,
1975, and you will be billed for an additional premium." (Emphasis
supplied.)

Payne did not reject the coverage, nor did she respond in any
way to the notice.

In January 1975, the General Assembly amended OCGA § 33-34-
5 to add subsection (c), which provides: "On and after March 1, 1975,
all named insureds in existing motor vehicle liability policies *who
have not previously responded* to an offer to accept or reject the op-
tional coverages required to be offered by this chapter shall be given
an opportunity to accept or reject, in writing, the optional cover-
ages. . . ." (Emphasis supplied.) Accordingly, in February 1975, All-

state sent out a second mailing to all policyholders. Included were an explanatory letter from the regional manager, an "Offer to Purchase Additional Coverage" Selection Form, a policyholder's identification card, and a pre-paid return envelope.

The letter from the regional manager stated in part:

"There has been an important change in the Georgia No-Fault Law since we wrote you recently about the law and how it affects your policy."

"The law has been amended to give you another opportunity, if you have not already done so, to accept or reject in writing, certain optional coverages we're required to offer. If you don't notify us of your acceptance or rejection in writing within 30 days of the date we mailed you this notice, it shall be considered as a rejection of the optional coverages."

"You can use the Selection form to indicate the optional coverages you want to reject or accept and return it to us. Or, if you don't want any of the optional coverages, you don't have to notify us."

"If you've already *indicated to us* the optional coverages you want, it is not necesary to complete another Selection Form. Your policy will include the optional coverages you *previously selected*." (Emphasis supplied.)

The Selection Form stated: "It is not necessary to complete this selection form unless you want one or more of the optional coverages." The form then set forth various options, including the minimum mandatory $5,000 PIP. Provision was made for selection by checking applicable blocks, with appropriate signature lines.

The reverse side of the Selection Form stated: "You can accept or reject the optional coverages by completing the Selection form on the other side and returning it to us. If we do not receive written notice of your acceptance or rejection within 30 days from the date we mailed this to you, it shall be considered as a rejection of the optional coverages."

Thus it will be seen that the February 1975 notice, in no less than four instances, informed policyholders that a failure to respond would be the equivalent of a rejection of optional coverages.

Payne failed to respond. In November 1976, she was injured in an automobile collision, and subsequently died.

At the time of the collision, the stated limit of Payne's policy was $5,000 personal injury protection, with premium payments fixed accordingly. Allstate paid the basic PIP benefits, but refused to pay $45,000 in optional benefits. The estate brought suit. The United States District Court granted summary judgment in its favor, finding that Payne's failure to reject to the December notice was an acceptance of maximum coverage, which was not altered by her failure to respond to the subsequent mailing. Allstate appealed, and the issue

has been certified to us.

1. We note that the documents mailed by Allstate in February 1975, fully complied with the provisions of OCGA § 33-34-1 et seq., and our holdings in *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698 (310 SE2d 221) (1983) and *Stafford v. Allstate Ins. Co.*, 252 Ga. 38 (311 SE2d 437) (1984).

(a) The General Assembly amended the Act by adding subsection (c) for the specific purpose of dealing with then existing policyholders of then existing policies. "The original no-fault Act required insureds to utilize forms for application for insurance which contained separate spaces for the insured to indicate acceptance or rejection of each of the optional coverages provided for in the Act. Ga. Laws 1974, p. 113 at p. 118. (OCGA § 33-34-5 (b) (Code Ann. § 56-3404b)). One of the required optional coverages was up to $50,000 for personal injury benefits (PIP) and the other was vehicle damage coverage. . . . However, the original Act failed to take into account policies which would be in existence on the effective date, March 1, 1975. No application would be submitted for these policies because they would already be in existence. Yet, the question of optional coverages needed to be addressed for existing as well as new policies. The 1975 amendment dealt with this question. The pertinent part of the amendment is codified at OCGA § 33-34-5 (c)." *Wiard v. Phoenix Ins. Co.*, 251 Ga., supra at 699-700.

(b) The 1975 amendment (subsection (c)) required notice to then-existing policyholders "who had not previously responded to an offer to accept or reject the optional coverages." The estate contends that *failure* to respond to the first notice was the legal equivalent of an acceptance of additional coverage. With that we must disagree. The additional coverage was to be added *commencing on March 1, 1975*, "unless the present law is amended," as announced in the notice of December 1974. In January 1975, the law was amended. Thus, the optional coverage discussed in the first notice never became a part of the policy. The first mailing had no effect on Payne's policy. See also *Ga. Farm Bur. Mut. Ins. Co. v. Drexler*, 254 Ga. 98 (1) (326 SE2d 741) (1985).

(c) Allstate's second mailed notice (February 1975) commenced as follows: "There has been an important change in the Georgia No-Fault Law . . ." As in *Stafford*, supra, the documents contained "(1) written information clearly stating the optional no-fault PIP coverage and the optional no-fault vehicle damage coverage, and (2) a means for the insured to make a written acceptance or rejection of each." 252 Ga. at 39. As noted, the documents clearly and repeatedly informed the insured that a failure to respond would be equivalent to rejection of optional PIP coverage.

Accordingly, Payne's failure to respond to the February 1975 no-

tice constituted a rejection of optional coverage.

2. We answer the certified question as follows:

(a) Allstate's notices complied fully with the No-Fault Insurance Act, insofar as here material.

(b) Payne's failure to respond to the second notice constituted a rejection of all PIP coverage in excess of the basic coverage of $5,000.

*Certified question answered. All the Justices concur, except Smith, J., who dissents.*

DECIDED APRIL 2, 1985 —
REHEARING DENIED APRIL 30, 1985.

*Dennis, Corry, Webb & Carlock, Thomas S. Carlock, R. Clay Porter,* for appellants.

*Burnside & Wall, Thomas R. Burnside, Jr., James B. Wall,* for appellee.