42279. COTTON STATES MUTUAL INSURANCE COMPANY
v. LASHLEY.
(335 SE2d 855)

WELTNER, Justice.

Cotton States Mutual Insurance Company appeals from grant of the insured's motion for partial summary judgment and from denial of its motion for summary judgment as to the issue of optional PIP benefits. The jurisdiction of this court is based upon certain constitutional claims, which we do not reach.

1. In December 1974, Mrs. Lashley's husband returned to Shield Insurance Company a signed form by which he indicated that he did not want his insurance policy (first issued by Shield Insurance Company in 1973) to be amended to include optional PIP benefits. The form complied with the requirements of *Wiard v. Phoenix Ins. Co.*, 251 Ga. 698 (310 SE2d 221) (1983).

2. In May 1976, Mrs. Lashley's husband received notice from his insurance agent that, because of his exemplary driving record, he was entitled by the underwriting policies of Shield Insurance Company and Cotton States Mutual Insurance Company to transfer his policy from Shield to Cotton States, and thereby pay a lower premium. Shield and Cotton States are related entities, with different rate structures. Cotton States did not offer either to Mrs. Lashley or to her husband optional PIP coverage at any time. In July 1981, anticipating a divorce, Mrs. Lashley was substituted on the policy as named insured.

3. We are asked to determine whether Cotton States was required to offer optional PIP benefits (a) to Mrs. Lashley's husband at the time that his policy was changed from Shield to Cotton States, or (b) when Mrs. Lashley was substituted as the named insured.

We answer both questions in the negative.

(a) Mrs. Lashley's husband had responded to a proper offer to accept or reject the optional coverages. We decline to hold that the transfer of his coverage from one insurance company to another related company for the purpose of obtaining a lower premium necessitated a second opportunity to accept or reject optional PIP benefits. *Ga. Farm Bureau Mut. Ins. Co. v. Drexler*, 254 Ga. 98 (326 SE2d 741)

(1985); *Pritchard v. Allstate Ins. Co.*, 254 Ga. 290 (328 SE2d 362) (1985).

(b) We further decline to hold that the substitution of Mrs. Lashley as named insured required Cotton States to extend another such opportunity. *Drexler*, supra. To the extent that *Dixson v. Travelers Indem. Co.*, 167 Ga. App. 198 (305 SE2d 900) (1983), may point to a differing result, it is disapproved.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

1. This court held, in the ubiquitous *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) that an insurance policy lacking an affirmative written rejection by the insured of optional PIP coverage violated OCGA § 33-34-5. We then determined that the insured in case of such a violation was entitled to recover $50,000 in PIP benefits in certain situations upon payment of the proper premium. *Flewellen* defined a violation of OCGA § 33-34-5, and it determined the consequences of such a violation.[1]

The legislature, in response to the line of cases leading up to *Flewellen*, amended OCGA § 33-34-5 in 1982. Ga. Laws 1982, p. 1234. The majority of this court, in *Mullins v. First General Ins. Co.*, 253 Ga. 486, 487 (322 SE2d 265) (1984), held that the legislature, in amending the statute, intended "to bar claims for optional PIP benefits by insureds who held policies existing as of November 1, 1982 which were not in compliance with former OCGA § 33-34-5." Although we found in *Mullins*, supra, that the legislature's method accomplished its purpose, we did not determine whether the legislature, by altering the definition of a violation of OCGA § 33-34-5 or by altering the remedy for such a violation, effectuated its purpose in a constitutional manner. See *Mullins*, supra at 488-489, (Hill, C. J., concurring specially).

In amending OCGA § 33-34-5, the legislature first changed the requirement mandated under subsection (b) that the insured sign a rejection of optional PIP coverage to a requirement that the insured sign an acknowledgment that he had received an explanation of the various options available. The amendment then, in subsection (c), declared all insurance policies in existence to contain such a signed acknowledgment, even though the acknowledgments had never been required and had never existed. The legislature altered the definition of a violation of OCGA § 33-34-5, rather than the consequences of such

---

[1] I would hold, in addition, that *Flewellen* provided a vested right, not merely a remedy, as a consequence of a violation of OCGA § 33-34-5 coupled with a personal injury to the insured. See *Mullins*, supra, Clarke, J., dissenting.

a violation, then it rewrote the facts in existence to fit the new definition and to preclude the finding of any violations of OCGA § 33-34-5 that had occurred prior to its amendment.

In amending subsection (c), the legislature did not pass a law to be applied retroactively to facts in existence. See *Ross v. Lettice*, 134 Ga. 866 (68 SE 734) (1910).[2] The legislature did not establish, in the new subsection (c), a presumption of fact to be drawn from facts in existence. See *Leary v. United States*, 395 U. S. 6, 29-54 (89 SC 1532, 23 LE2d 57) (1969).[3] Certainly, the amendment to subsection (c) is not a "declaration of substantive law." *Jaques & Tinsley Co. v. Carstarphen Warehouse Co.*, 131 Ga. 1, 16 (62 SE 82) (1908). Rather, the legislature has declared the conclusive existence of facts, independent of any basis in reality, which combine with a retroactively applied subsection (b) to produce a specific outcome in a specific group of cases.

*Dougherty v. Bethune*, 7 Ga. 90 (1849), provides a similar factual situation. There, the legislature passed an act declaring the existence and validity of a number of assignments, including an assignment of the obligations under a note by the Chattahoochee Railroad and Banking Company to John Bethune. The act subsequently provided that Bethune and other assignees under its terms possessed " 'full power to sue and be sued in their character as assignees, for any demand due to and from said banking institutions.' " Id. at 91.

The holder of the bank's note, Dougherty, sued Bethune as the assignee under the bank's obligations. Bethune denied that the bank ever assigned the obligations under the note to him. Dougherty asserted that the act in question absolutely disposed of Bethune's denial of the assignment.

This court held, "[The act] is conclusive as to all legal rights which may exist under its provisions. But so far as it *recites facts*, it is not a law, and the Courts are not bound to recognize it as such. The Legislature has no power to legislate the truth of facts. Whether facts upon which rights depend, are true or false, is an inquiry for the Courts to make, . . . it belongs to the judicial department of the Government. By the Constitution, the legislative and judicial departments are distinct. A citizen is not estopped to deny, in the Courts of the country, any mere fact which the Legislature may choose to recite. If he was, the Government would be a despotism, and the Legislature might be a tyrant." *Dougherty*, supra at 92-93 (emphasis in

---

[2] Actually, if the change in *law* made in subsection (b) were to be applied retroactively without the change in *fact* made in subsection (c), *all* policies issued before November 1, 1982, not just those without proper rejections, would be in violation of OCGA § 33-34-5.

[3] Even the declaration of facts underlying a presumption established by the legislature may be questioned. *Leary*, supra.

original).

Here, as in *Dougherty*, the legislature has attempted to foreclose the outcome of a specific group of potential cases. The legislature has done this not by altering a possible remedy available in the cases,[4] but by proclaiming the existence of facts that would preclude the finding of any statutory violations actually in existence. A recitation of fact is not law which binds the courts in this state.

A contrary holding enables the legislature to pass a valid act stating, for example, "The judicial retirement age shall be sixty years of age. All justices currently serving on the Supreme Court shall be deemed sixty years of age as of December 1, 1985." Under our form of government based upon the separation of powers, the legislature establishes the law of the land and the courts apply the law to the facts as they find them. Const. of Ga., Art. I, Sec. II, Par. III. OCGA § 33-34-5 (c), thus, constitutes a legislative usurpation of a judicial function, and should not bind the courts of this state.

2. I would follow *Dixson v. Travelers Indem.*, supra, as well.

I dissent.

DECIDED OCTOBER 23, 1985.

*Alston & Bird, Oscar N. Persons, Vickie Cheek Lyall, Walter G. Elliott II,* for appellant.

*Allman & Lanner, Douglas F. Aholt,* for appellee.

---

[4] *Pritchard v. Savannah Street &c. R. Co.*, 87 Ga. 294 (13 SE 493) (1891), provides a number of examples of legislative alteration of remedy or procedure.